## Case No. 11,676.

### REIMER et al. v. SCHELL.

[4 Blatchf. 328.][1]

Circuit Court, S. D. New York. May 27, 1859.

CUSTOMS DUTIES—COLORED HOSIERY—REDUCTION IN DUTIES—CLASSES—ACTS OF 1846 AND 1857.

1. Under the tariff act of July 30th, 1846 (9 Stat. 46), colored hosiery, consisting of gloves, stockings, and the like, composed wholly of cotton, sometimes colored in the piece, and sometimes in the yarn, before being made up or manufactured, and either printed, painted, or dyed, was classed under schedule E, as "caps, gloves, leggins, mits, socks, stockings, wove shirts and drawers, made on frames, composed wholly of cotton, worn by men, women, and children," and subject to a duty of 20 per cent. ad valorem. The 1st section of the tariff act of March 3, 1857 (11 Stat. 192). reduced the duty upon articles in schedule E of the act of 1846, to 15 per cent., "with such exceptions as are hereinafter made." The 2d section provided, that "all manufactures composed wholly of cotton, which are bleached, printed, painted, or dyed, &c.," should be transferred to schedule C in the act of 1846, which schedule was, under that act, subject to 30 per cent. duty, but was reduced, by the act of 1857, to 24 per cent.: *Held*, that the colored hosiery was transferred by the act of 1857 to schedule C in the act of 1846, and was subject to 24 per cent. duty, and did not remain under schedule E of the act of 1846, so as to be subject to only 15 per cent. duty.

[Cited in Cochran v. Schell, 107 U. S. 621, 2 Sup. Ct. 305; Re Certain Merchandise, 64 Fed. 579.]

2. It seems that, under the 5th section of the act of 1857, an importer cannot institute a suit against a collector, to recover an excess of duty, or a penalty paid for alleged undervaluation, without having first appealed to the secretary of the treasury according to the requirements of that section.

3. Where goods are entered at too low a rate of duty. and are warehoused and the duty secured. the collector has a right, when the goods are withdrawn from warehouse, to exact the higher and proper rate of duty.

This was an action [by Joseph W. Reimer and others] against [Augustus Schell] the collector of the port of New York. to recover back an excess of duties paid under protest.

[1] [Reported by Hon. Samuel Blatchford, District Judge. and here reprinted by permission.]

John S. McCulloh, for plaintiff.

Theodore Sedgwick (Dist. Atty.), for defendant.

NELSON. Circuit Justice. The question in this case, and nine others, arises under the tariff act of March 3d, 1857 (11 Stat. 192). The goods, the duties upon which are in controversy, are colored hosiery, composed wholly of cotton, consisting of gloves, stockings, and the like. Cotton hosiery is said to be divided into bleached, unbleached, and colored. The article is sometimes colored in the piece, and sometimes in the yarn, before being made up or manufactured. All colored cotton hosiery is either printed, painted, or dyed. Unbleached goods are the brown goods which have not gone through the process of bleaching, and are not usually colored.

Under the tariff act of July 30, 1846 (9 Stat. 46), the goods in question were classed under schedule E, as follows: "Caps, gloves, leggins, mits, socks, stockings, wove shirts and drawers, made on frames, composed wholly of cotton, worn by men, women and children," and were subject to a duty of twenty per cent. ad valorem. The first section of the tariff act of March 3, 1857, reduced the duty upon articles in schedule E of the act of 1846, to fifteen per cent., "with such exceptions as are hereinafter made." The second section provided, that "all manufactures composed wholly of cotton, which are bleached, printed, painted, or dyed, &c," shall be transferred to schedule C in the act of 1846, which schedule was, under that act, subject to a duty of thirty per cent., but was reduced, by the act of 1857, to twenty-four per cent. The controversy here is, therefore, whether the goods in question are subject to a duty of fifteen, or of twenty-four per cent. It is claimed on the part of the importers that the goods remain under schedule E. of the act of 1846, and are, of course, subject only to the reduced rate of duty of fifteen per cent.; while the government claim that they have been transferred, by the language used in the second section of the act of 1857, to schedule C, and are, therefore, subject to the twenty-four per cent. duty. I think the latter the sounder construction of the act. The goods fall directly within the description, "all manufactures composed wholly of cotton, which are bleached, printed, painted, or dyed." The legislature designates the articles by special description, as contradistinguished from a designation by a commercial name; and the proper inquiry is as to their qualities and characteristics, with a view to ascertain if they come within the description. If they do, no argument can take them out of the rate of duty which has been imposed.

It is said that there are various manufactures composed wholly of cotton, bleached, printed, painted, or dyed, other than cotton hosiery, such as muslins, lawns, calicoes,

velvets, handkerchiefs, &c., to which the clause applies; and such is the proof in the case. But, if the hosiery in question comes equally within the description, I see no reason for distinguishing these goods from those above referred to, and which it is admitted fall within the section.

It is argued, also, that the addition, in the particular enumeration of the articles in schedule E of the act of 1846, of the words "made on frames," and "worn by men, women, and children," restrains the second section of the act of 1857 from an operation and effect that would comprehend any one article found in the enumeration. I think not. If the subsequent amendatory act adopts language that embraces any one or all of the articles enumerated, it must prevail, and be regarded as changing the law. The first section of the act of 1857, which reduced the rate of duty upon goods under schedule E in the act of 1846, contemplated exceptions to the general reduction of the rate, and therefore added, "with such exceptions as are hereinafter made." These exceptions are found in the next section, and the very first is the one in question, "all manufactures composed wholly of cotton, which are bleached, printed, painted, or dyed," which articles, as thus described, under whatever schedule arranged in the act of 1846, are transferred to schedule C, and subjected to a duty of twenty-four per cent. The section goes on, and in this way makes many other exceptions. The first one, as I have said, embraces, in terms, the goods in controversy.

Some question is made as it respects the powers of the secretary of the treasury, under the act of 1857, over rates of duty. I do not deem it important, in this case, to look into that question. I must say, however, that, under the fifth section of the act of 1857, I do not see that the importer is competent to institute a suit against the collector to recover an excess of duty or a penalty paid for alleged undervaluation, without having first appealed to the secretary, according to the requirements of that section, and must then bring his suit within the time limited.

In some of these cases, the goods were at first admitted at the rate of fifteen per cent. duty, and sent to the warehouse, and the duty secured according to law; and, when the goods were afterwards withdrawn, the duty was raised to the twenty-four per cent. This is supposed to be illegal. But the mistake of the collector in not charging the proper rate of duty, did not disable the government from collecting the legal rate, nor the collector from correcting his error, nor did the mistake release the importers from an obligation imposed by law; and, as the collector had the means of enforcing the payment of the legal rate, it was his duty to exact it before he parted with the goods. Even if he had parted with them without the payment of the duty, the importer would have been liable to an action by the government to recover them.

It is said that, in some of the cases, the duty of twenty-four per cent. was imposed upon a small quantity of hosiery which was unbleached. If this be so, the collector must return the excess, under the arrangement by the counsel. In looking through the several cases, however, I find that the only appeals to the secretary were in cases of hosiery bleached; and I infer, therefore, that no question was made in respect to the unbleached articles.