DALE and another *v*. REDFIELD and another, as Ex'x and Ex'r, etc.

STRANG and others *v*. SCHELL.

*(Circuit Court, S. D. New York. December 10, 1884.)*

CUSTOMS DUTIES—ILLEGAL EXACTIONS—CONTRACT TO BRING SUIT TO RECOVER—
SUBSTITUTION OF ATTORNEYS—EFFECT OF JUDGMENT.

Contract whereby plaintiffs and others authorized the institution of suits to recover alleged illegal customs duties and fees construed, and *held* that the substitution of the attorneys, through whom some of such suits were settled, was valid; that plaintiffs were bound by the action of said attorneys; and that the cases so settled should not be revived against the executors of the collector.

At Law.

*Lewis Sanders* and *George N. Sanders*, for plaintiffs.

*Elihu Root*, Dist. Atty., *Thomas Greenwood* and *Ladislas Karge*, Asst. Dist. Attys., for defendants.

*William Nelson Cromwell*, for the executors of Douglas.

BLATCHFORD, Justice. About the year 1860 one Alfred Douglas, Jr., who was then a merchant in the city of New York, became satisfied that certain exactions made by various collectors of customs for duties and fees were excessive, and could be recovered back. Thereafter, he, at his own instance, in connection with one Earl Douglas, entered into a contract or contracts with several hundred merchants, including the plaintiffs in these two suits, whereby the said Douglases agreed to endeavor to establish, by legal decisions or otherwise, that such exactions were illegal, and to recover back the excess of duties and fees so paid; and, in consideration of their undertaking and services rendered, the other parties to the contract severally agreed to allow and pay to said Alfred Douglas, Jr., "for himself and associate," as compensation for said services, a fee equal in amount to one-half part of all and any sums of money they might recover; it being expressly understood and agreed that all expenses and costs were to be for account and risk of said Douglases, whether they were successful or not. In cases where the contract was in writing and signed by the merchant, it read as follows, and in cases where it was verbal, its terms were as follows:

"Whereas, the collectors of customs at various ports in the United States have been and are still exacting excessive duties on our importations of merchandise, and fees on the necessary papers accompany the entry of the same at the custom-houses, owing to our being compelled to add to our entries and to pay duty on actual or estimated transport coastwise, and inland freight charges; also, to add to our entries, and to pay duty on, commissions, cost, and charges, instead of upon the cost or market value, without charges; also, to add to our entries, and pay duty on, commissions at higher rates than the usual rates charged within different foreign countries from whence we import; also, to add to our entries, and pay duty on, charges and commissions not actually incurred; also, owing to our being compelled to pay fees for oaths

to entries, clearances, manifests, stamps on invoices, etc., and orders from one department of the custom-house to the other, which exactions, we are advised, are contrary to law; therefore, the undersigned, in behalf of themselves and consignors, have employed Alfred Douglas, Jr., and Earl Douglas, of New York city, who agree, on their behalf, to endeavor to establish, by legal decisions or otherwise, that such exactions are illegal, and to recover the excess of duty and fees paid by us to the United States; and, in consideration of their undertaking and services rendered, we hereby severally agree *to allow and pay to said Alfred Douglas, Jr., for himself and associate, as compensation for said services, a fee equal in amount to the one-half part of all and any sums of money they may recover;* it being expressly understood and agreed that all expenses and costs are to be for account and risk of Alfred Douglas, Jr., and Earl Douglas, whether they are successful or not."

Thereafter the said Douglases, upon their own responsibility, and in their own behalf, made a contract or contracts with Messrs. Kaufmann, Frank & Wilcoxson, attorneys at law, whereby, at their own expense, they employed said attorneys to bring, and said attorneys brought, in the state courts of the state of New York, as attorneys of record for the plaintiffs therein, a large number of suits, including these two, in the names of the various merchants, to recover such duties and fees, all of which suits were duly removed into this court. Earl Douglas died about 1865. On the fifth of April, 1866, Alfred Douglas, Jr., upon his own responsibility, and in his own behalf, made a written contract with E. Delafield Smith, an attorney at law, and for some time before 1866 attorney of the United States for the southern district of New York, and for some time after that date corporation counsel of the city of New York, whereby, at his own expense, he employed said Smith, and thereafter caused him to be substituted as attorney of record for the plaintiffs in all of said suits, including both of these suits, in place of Kaufmann, Frank & Wilcoxson. The general terms of such written contract were, that, on the recovery of money on a claim in suit, whether it should go to verdict or judgment, or not, Douglas would pay to Smith for his services a specified fee, varying with the amount of the recovery; taxed costs not to be deemed a part of the amount recovered; the agreement to apply to all cases which Douglas had brought through Kaufmann, Frank & Wilcoxson or one Pomeroy, except some silk-plush and worsted cases; all similar cases not in suit to be placed in Smith's hands for management and collection, as attorney of the claimants, and he to receive on recovery one-half of the net amount which Douglas should realize out of the recovery, and in case of suit the taxable costs recovered; the "net amount" to mean what Douglas should realize over actual and necessary disbursements to be approved by Smith; the agreement to embrace all suits and claims for duties exacted on nine specified classes of items.

On the twenty-sixth of April, 1866, Douglas and Smith modified in writing the terms of the prior agreement, thus: Smith agrees to lend to Douglas $10,000 on mortgage, and to advance to him $5,000 to pay costs, as agreed on with Kaufmann, Frank & Wilcoxson, where-

upon all cases in their hands, which Douglas had caused to be instituted, are to be transferred to Smith, and Douglas is to be responsible to Smith for one-half of the $5,000, and it is to be added to the mortgage; all docket fees in the cases so transferred are to be transferred to Smith, "except the $10," or to be credited to Douglas in reimbursement of the $2,500 for which he is responsible, and also of any additional sum which he himself may pay "to Wilcoxson;" the balance of the docket fees to belong to Smith; all the cases to be in Smith's own name, unconnected with any other lawyer, and, in case of his death or prostration by disease, the cases not adjusted to revert to Douglas on an equitable and just payment for Smith's actual services and disbursements in the cases; the agreement of April 5, 1866, to stand good, but the transfer from Kaufmann, Frank & Wilcoxson to include every suit and claim of every kind in their hands from Douglas, and the agreement of April 5, 1866, to extend to all the suits so to be transferred; Douglas is attorney in fact of the merchants plaintiffs, and Smith is the attorney at law; collections recovered by Smith in any case to be paid over by him to Douglas, and not to the plaintiffs, Douglas dealing directly with the merchants. Smith, under said employment and contracts, became attorney for the plaintiffs in May, 1866, and continued to act as such until April 12, 1878, when he died. Alfred Douglas, Jr., died October 3, 1876. During his life-time he expended at least $200,000 in and about said suits, as fees of the regular attorneys of record for the plaintiffs, and counsel fees, and for services of competent clerks, assistants, and experts in preparing the same for trial, and for payment of court fees, and traveling expenses of himself, his attorneys, agents, and assistants to and from Washington. He employed as counsel, besides others, William M. Evarts, Edwin W. Stoughton, and Edward Jordan.

The Douglases, during their life-time, through their attorneys and others employed by them, and through their own individual efforts, caused to be recovered and paid, in a large number of said suits, judgments amounting to over $600,000. Since the death of Alfred Douglas, Jr., his executors have employed counsel, agents, etc., in and about such of said suits as were not disposed of before that time, and have expended therein at least $30,000, and have also made contracts and incurred liabilities in and about such remaining suits, and, as appears by the records in the custom-house in the city of New York, have recovered, in some of such suits, upwards of $125,000. As a result of the litigation had during the life-time of Alfred Douglas, Jr., his efforts, and the efforts of the various counsel and others employed by him, or by him and Earl Douglas, verdicts or orders of reference were obtained, prior to the death of Smith, in all of said suits (including these two) with the exception of some few suits, which verdicts or orders required only an adjustment of the suits in accordance with the terms thereof, and the rules and decisions of this court in

similar cases, as far as the same should be found applicable. The plaintiffs, under their contracts with the Douglases, never contributed to the expenses of the suits, all of which were paid by the Douglases, or by Alfred Douglas, Jr., during the life-time of Alfred Douglas, Jr. The said attorneys of each of the plaintiffs were appointed by Alfred Douglas, Jr., under the contract so made by the Douglases with the plaintiffs, and the plaintiffs were not consulted, nor did they request to be consulted, concerning such appointments or changes of attorneys, all of which were made by the sole direction of Alfred Douglas, Jr. With the exception of some few of the suits, the plaintiffs in none of the suits have ever claimed any voice or right in the appointment of attorneys to represent them, or in the changes of attorneys, or in any matter connected with the management of the litigation, but have left all of such matters entirely to the control and management of Alfred Douglas, Jr., during his life-time, and of his executors since his death. This is true as to *Strang* v. *Schell* up to about March 27, 1884, when the plaintiffs in it served a notice of a motion to set aside the judgment order of March 1, 1881, hereafter mentioned; and it is true as to *Dale* v. *Redfield* up to about July 17, 1884, when the plaintiffs in it, and in several others of the suits, gave notice that they repudiated the judgment order therein.

After the death of Smith, in April, 1878, owing to the action of the government in carrying certain of the suits to the supreme court of the United States, and to the cessation of proceedings in all others thereof, the executors of Alfred Douglas, Jr., let some time elapse without making any substitution of an attorney in the place of Smith, but employed counsel to take general charge of the suits. But on September 26, 1878, those executors caused William Nelson Cromwell to be substituted as attorney for the plaintiffs, in the place of Smith, in all of the suits which were then pending (including these two) by a rule duly entered. In November, 1878, the attorney of the United States, as attorney for the defendants in the suits (including these two) moved this court to vacate such rule of substitution, on the ground that the contract made by the Douglases with the plaintiffs in the suits was champertous and void, and, if not, that the executors of Alfred Douglas, Jr., had no power to appoint an attorney for such plaintiffs. The motion was made on notice to Mr. Cromwell, as attorney for the plaintiffs in all the suits, (including these two,) and counsel were heard on both sides. On November 20, 1878, a decision on the motion was filed, holding that the contract was not invalid, under the law as to champerty and maintenance, as understood and interpreted by the courts of New York; that the contract did not die with Alfred Douglas, Jr.; and that the motion must be denied. An order was entered denying the motion in all of the suits, (including these two.) Thereafter, Mr. Cromwell was recognized and treated by the attorney for the collectors, defendants in the suits, (who was the attorney of the United States,) as attorney for the plain-

tiffs in the suits covered by such rule of substitution, (including these two,) until August 11, 1880, when, at the request and under the authority of the executors of Alfred Douglas, Jr., and on application to this court, Mr. Edward Jordan was, by an order of this court, substituted as attorney, in the place of Mr. Cromwell, for the plaintiffs, in all of the suits, (including these two.) Mr. Jordan was formerly solicitor of the treasury of the United States, and as such was familiar with such suits. After he had ceased to be such solicitor, and before he was so substituted as attorney, he was employed by Alfred Douglas, Jr., as counsel in the suits, (including these two.)

Thereafter, Mr. Jordan was recognized and treated by the attorney for the collectors, defendants in the suits, as attorney for the plaintiffs. Mr. Cromwell and Mr. Jordan, as such attorneys, were given access to, and examined, one or the other of them, the custom-house papers, at the custom-house, in nearly all of the suits, (including these two,) on the express understanding and agreement that those of said suits in which both sides could agree as to the amount of duties recoverable on charges and commissions, should be adjusted and paid; that those in which both sides agreed that nothing was recoverable should be discontinued, or otherwise disposed of; that those in which both sides agreed that nothing was recoverable as to charges and commissions should be discontinued as to that issue; and that those in which both sides could not agree, or in which there was any other issue than charges and commissions, should be litigated in court. The government, to carry out its part of such agreement, and to dispose of the cases, employed, at great expense, attorneys, experts, adjusters, and other assistants. Of the suits in which the custom-house papers were so examined, some 99 suits were, on such understanding and agreement, adjusted and put in judgment, or were, on the consent of Mr. Jordan, as attorney for the plaintiff, and of the attorney for the defendant, discontinued for payment, and over $125,000 have been paid in full settlement thereof. Some 193 other suits, in which Mr. Jordan, as attorney for the plaintiff, after such examination, and on his own judgment, concluded that the plaintiff was not entitled to recover anything, were, on his consent as such attorney, and that of the attorney for the defendant, wholly discontinued, without costs, the attorney for the defendant having first obtained authority from the secretary of the treasury of the United States to waive costs. In some 186 other suits, (including these two,) in which Mr. Jordan, as attorney for the plaintiff, after such examination, also came to the same conclusion, motions were made by the attorney for the defendant for judgment, and judgment was rendered for the defendant, by an order entered March 1, 1881, costs having been waived by the attorney for the defendant, upon the authority aforesaid. Some 34 other suits, in which Mr. Jordan concluded that the plaintiffs were not entitled to recover anything as to charges and commissions, were discontinued as to charges and commissions,

and continued as to other issues involved. Some few suits, in which both parties could not agree, have been litigated in court.

Heman J. Redfield was collector of customs at New York from November, 1853, to July 1, 1857. The suit of *Dale* v. *Redfield,* was commenced in the supreme court of New York, April 24, 1863, against Mr. Redfield. About May 1, 1863, he appeared by Mr. E. Delafield Smith, then attorney for the United States, and demanded a bill of particulars of the plaintiffs' claim. The suit was removed into this court, July 20, 1863. Issue was joined May 20, 1866. On the nineteenth of April, 1872, on the written consent of Mr. Smith, as attorney for the plaintiffs, and of the attorney for the several defendants, an order was entered, entitled in that suit and 134 other suits, referring the suits to Edwards Pierrepont, Esq., as sole referee. The order states that the suits are "now pending in this court to recover duties alleged to have been illegally exacted upon charges and commissions;" that the order is made on motion of Mr. Smith, as counsel for the plaintiffs; that Mr. Pierrepont is appointed referee to take proofs of and ascertain the claim of the plaintiffs "for excess of duties upon such charges and commissions, which may be found to have been illegally exacted from plaintiffs;" and that, on the coming in of the report of the referee, and the decision on exceptions which might be taken to it, either party might "move for judgment or verdict." On December 19, 1876, an order was made in the same language, referring *Dale* v. *Redfield,* and other cases, to John I. Davenport in place of Mr. Pierrepont.

Augustus Schell was collector of customs at New York from July 1, 1857, to April 8, 1861. The suit of *Strang* v. *Schell* was commenced in the supreme court of New York, June 9, 1865, against Mr. Schell. It was removed into this court November 18, 1865. The declaration, which was put in in this court, January 25, 1866, contained only the common money counts, and claimed $1,980. Issue was joined, by a plea of *non-assumpsit,* on February 10, 1866. On the thirteenth of March, 1875, on the consent of Mr. Smith, as attorney for the plaintiffs, and of the attorney for the defendant, the suit was, by an order of this court, referred to John I. Davenport, the order being in the same words as the above-named orders of reference in *Dale* v. *Redfield.*

In February, 1881, the defendants in 146 suits against three collectors (including these two suits) moved for an order requiring the plaintiffs to serve bills of particulars of the items of their demands, or, if none could be served, then for an order rendering judgment for the defendant. Mr. Jordan was attorney for the plaintiffs in all of the suits, and the motion was made on notice to him, on an affidavit stating that more than 15 years previously the defendants had appeared and served on the attorney for the plaintiffs a demand for a bill of particulars, but none had been served in any of the suits; and that each of the suits was brought to recover an excess of duty on mer-

chandise imported by the plaintiffs. The motion was made and granted, and on the first of March, 1881, an order was entered, the form of which was assented to in writing by Mr. Jordan, as plaintiffs' attorney, entitled in the 146 suits, (including these two,) which order recites the motion, and says that, "it appearing that no bill of particulars can be served in any of said actions," it is, after hearing the attorneys for both parties, "ordered that judgment be, and the same is hereby, rendered, in each of said actions, in favor of the defendant or defendants therein, and against the plaintiff or plaintiffs therein."

In the custom-house in New York it was the practice of the collectors, (including Redfield and Schell,) from about January, 1851, to June, 1883, to exact three fees of 20 cents each, as follows: When an invoice and an entry were presented, the collector put a stamp on the invoice, showing the date of its presentation, and charged 20 cents therefor. He also charged 20 cents for administering the owner's or consignee's oath on the entry. He also charged 20 cents for an order from the collector to the store-keeper in the public store to deliver to the importer examined and appraised packages. Down to April 22, 1881, there had not been any recovery by any importer for the return of such fees as illegally paid. In numerous suits against collectors who had exacted such fees, brought to trial, or settled, or otherwise disposed of, such fees were not considered recoverable, or the attempt to recover them was abandoned. No attempt was ever made to recover such fees until about April 22, 1881, and then, on the trial of *Benkard* v. *Schell*, in which Mr. A. W. Griswold was counsel for the plaintiffs, there was a recovery by them for such fees. A like recovery was had by Mr. Griswold, in *Recknagel* v. *Schell*, in November, 1881, and by Mr. George Bliss, in May, 1882, in *S. Cochran & Co.* v. *Schell*. The supreme court of the United States, at October term, 1882, affirmed the judgment in the last case, (*Barber* v. *Schell*, 107 U. S. 617, S. C. 2 Sup. Ct. Rep. 301,) holding that the exaction of the three fees was illegal; and in June, 1883, their exaction was discontinued by an order from the treasury department.

Mr. Schell having died March 28, 1884, and executors of his estate having been duly appointed April 14, 1884, the plaintiffs in *Strang* v. *Schell*, by Mr. Lewis Sanders, as their attorney, caused to be issued from this court, on the tenth of July, 1884, a writ directed to the marshal, commanding him to make known to the executors of Schell that they should show cause on July 29, 1884, why the several appearances of Mr. Cromwell and Mr. Jordan, as attorneys for the plaintiffs, and all proceedings thereunder, should not be expunged from the record as null and void, including the said order of March 1, 1881, and why the suit should not be revived against said executors. This writ was issued on an affidavit made by one of the plaintiffs, setting forth that the suit was brought to recover duties, charges, and fees; that, after the death of Mr. Smith, the plaintiffs did not appoint, or receive

notice to appoint, another attorney; that the order of March 1, 1881, was entered without the knowledge, consent, or authority of the plaintiffs, and after the death of Mr. Smith was known to the defendant's attorney, and that the plaintiffs were not informed until after January 1, 1884, that the suit had been attempted to be discontinued, or that any attorney had assumed to represent them since Mr. Smith's death.

The executors of Schell now move to quash said writ in *Strang* v. *Schell*, and the plaintiffs in *Dale* v. *Redfield* and in *Strang* v. *Schell* move to set aside the several orders substituting Mr. Cromwell and Mr. Jordan as plaintiffs' attorneys, and the order of March 1, 1881, and that the suits be reinstated, and Mr. Sanders be substituted as plaintiffs' attorney in place of Mr. Smith. The plaintiffs' motion in *Dale* v. *Redfield* is made on an affidavit of one of the plaintiffs therein, which sets forth that the suit was brought to recover illegal fees exacted from them by Mr. Redfield for oaths to entries, stamps, and orders; that, besides the claim for fees, they had a claim for duties on charges and commissions, exacted by Mr. Redfield, but it was paid in 1865, independently of this suit and of the Douglases, and there is no claim for duties on charges and commissions herein; that until the latter part of 1883 neither of the plaintiffs was informed of the death of Alfred Douglas, Jr., or of Mr. Smith, or of the substitution of Mr. Cromwell or Mr. Jordan as plaintiffs' attorney, or of the judgment of March 1, 1881; that they immediately took steps to set aside the orders of substitution and the judgments; that they never authorized the representatives of Alfred Douglas, Jr., to appoint an attorney for them; that, after the trial of *Hutton* v. *Schell*, in April, 1881, Mr. Jordan took no steps to have the judgment in *Dale* v. *Redfield* set aside; that the plaintiffs in that suit never had notice of an order to furnish a bill of particulars; that the claim to recover fees therein was never abandoned, and the plaintiffs never authorized it to be abandoned; and that they could have furnished a bill of particulars of their claim for fees at any time, if it had been demanded of them. The plaintiffs' motion in *Strang* v. *Schell* is made on an affidavit of one of the plaintiffs therein, to the same effect as the affidavit last recited in *Dale* v. *Redfield*, and further stating, that their contract with the Douglases was not in writing; and that, for want of protests, they never had any cause of action for the recovery of duties on charges and commissions, but they had and have a cause of action to recover fees. It otherwise appears that protests were made against the exaction of the fees from the plaintiffs in these two suits; that, from and after the death of Alfred Douglas, Jr., the plaintiffs never made, until recently, as before stated, any inquiry of his estate or of any of his attorneys as to the claims, or manifested any interest in them, or asserted any right to appoint attorneys on their own nomination. The Douglas estate claims the right to conduct these suits if the judgments are opened. It asserts that the contract survived Douglas,

and that, in any event, it must be compensated before there can be any substitution of an attorney in place of Mr. Jordan.

The propositions contended for on behalf of the plaintiffs are, that the executors of Alfred Douglas, Jr., had no right to substitute Mr. Cromwell as attorney in place of Mr. Smith, or Mr. Jordan in place of Mr. Cromwell, after the death of Mr. Smith, he having been appointed by Mr. Douglas; that the plaintiffs are not concluded by the decision of November 20, 1878, made on a motion of which only Mr. Jordan, and not the plaintiffs, had notice; and that the judgment of March 1, 1881, does not bind the plaintiffs. To support these contentions, it is urged by the plaintiffs (1) that the death of the two Douglases terminated the agency; (2) that the power given to them was not a power coupled with an interest; (3) that the power was a personal trust or a personal contract; (4) that Mr. Jordan's appearances were a nullity, and the judgments of March 1, 1881, were, therefore, void.

1. It is apparent from the contract between the plaintiffs and the Douglases, that the plaintiffs employed the Douglases to endeavor to establish, by legal decisions or otherwise, that the exactions were illegal, and to recover back the excess paid. The obtaining of legal decisions involved the bringing of suits in the names of the plaintiffs. The contract implied that attorneys at law were to be employed by the Douglases, and paid by them, with the chance on their part of reimbursement, if at all, only out of their half of the recovery. Such an arrangement could be carried out only by allowing the Douglases to have the control of the appointment and change of attorneys at law, the plaintiffs giving the use of their names, as having the title to the causes of action, but the Douglases agreeing to pay all costs and expenses in any event. Such was the practical construction of the contract by the parties to it. The plaintiffs for nearly 20 years allowed the Douglases, and the survivor of them, and his executors, to employ and change attorneys. The Douglases first employed Kaufmann, Frank & Wilcoxson. In 1866, Alfred Douglas, Jr., employed Smith. He continued to act after 1876, when Alfred Douglas, Jr., died, until 1878, when he died himself. Then the executors of Alfred Douglas, Jr., employed Mr. Cromwell, and afterwards Mr. Jordan. It matters not that the plaintiffs did not hear for seven years of the death of Alfred Douglas, Jr., or for five years of the death of Mr. Smith. The acquiescence was the same as if they had heard of such deaths when they occurred, so far as the executors and the defendants were concerned. The plaintiffs knew they had put the matter into the hands of the Douglases, and it sufficiently appears that they knew of Mr. Smith's employment. Inquiry was easy, especially as the statute has, since 1863, required that the attorney for the United States shall be the attorney for the defendant. Under such circumstances, negligence was acquiescence and consent. The very negligence serves to show that the plaintiffs regarded the whole matter as

out of their own hands, until there should be a recovery, or, at least, until they should, for good cause, interpose. By the contract, the Douglases acquired a substantial and valuable interest, as between themselves and the plaintiffs, in one-half of the claims, subject to the payment by themselves of all costs and expenses incurred about recovering them, even though nothing should be recovered. They had, with the authority given them by their contract relation, an interest, by virtue of which they and the survivor of them, and the executors of the survivor, were entitled to manage and control the claims and the suits, and appoint attorneys at law in them, at least until the plaintiffs should interpose, and then it would be for the court to determine on what terms there should be a change of relationship, as was done in *Dodge* v. *Schell*, 20 Blatchf. 517, S. C. 12 FED. REP. 515, in regard to one of the suits brought under the contract with the Douglases. The relation of the plaintiffs to the suits, when they do interpose, raises questions which are not necessarily the same as those raised, prior to such interposition, between the defendant and the executors of Alfred Douglas, Jr., and an attorney appointed by them. For this reason there may be, in each case, special circumstances as to the services rendered by the Douglases, or by the attorneys employed by them, or the survivor of them, or his executors, and as to the position of the claim and the suit at the time of such interposition, which may require consideration.

The cases cited and relied on by the plaintiffs have no relevancy. In *Shelton* v. *Tiffin*, 6 How. 163, the person whom it was sought to bind by the judgment, through an appearance for him by an attorney, had not been served with process in the suit or had any notice of it, and had not authorized any appearance for him. But here the plaintiffs set the suits in motion by their contracts with the Douglases, and do not attempt to question anything done prior to Mr. Smith's death. The provision cited from the New York statute in regard to notice to a party, on the death of his attorney, to appoint a new one, has no application to a case where, as here, a new attorney is otherwise duly appointed.

2. It is apparent that the sole object now of reinstating these two suits is to obtain in them a recovery for the fees referred to. The judgments of March 1, 1881, were entered for want of prosecution of the suits, because of the failure to serve bills of particulars, and on the view, entertained in good faith at the time by all parties, that there was no cause of action, there being no claim in them for duties paid on charges and commissions, and it not being supposed that moneys paid for fees were recoverable. Everything goes to show that until April, 1831, though the suits had been pending 15 and 18 years, respectively, no one had supposed there could be a recovery in them for fees. Under such circumstances, the estates of the collectors, both of whom are dead, and the United States, who respond to the claims, have rights which are entitled to consideration. The at-

torney for the defendants, by due proceedings, obtained the judgments. Having put an end to the suits after so long a lapse of time, and so much more time having elapsed thereafter before the plaintiffs attempted to interpose, the defendants and the government have a right to hold the plaintiffs to their responsibility for the laches, there being no actual fraud or bad faith shown. In *Bronson* v. *Schulten*, 104 U. S. 410, the negligence or inattention of the plaintiffs or their attorney was held to be a bar to the correction of an erroneous judgment after the term at which it was rendered. The first recovery for fees, in April, 1881, was, as the statute shows, at a term subsequent to that at which these judgments were rendered.

The motion to quash the writ in *Strang* v. *Schell* is granted, and the motions of the plaintiffs in that suit, and in *Dale* v. *Redfield*, are denied.