## TOPLITZ v. HEDDEN.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF NEW YORK.

No. 45. Argued November 16, 1892. — Decided November 28, 1892.

Imported articles, used as head-coverings for men, invoiced as "Scotch
bonnets," and entered, some as "worsted knit bonnets," and others as
"worsted caps," and made of wool, knitted on frames, were liable to
duty as "knit goods made on knitting frames," under "Schedule K,
Wool and Woollens," of § 2502 of the Revised Statutes, as enacted by
§ 6 of the act of March 3, 1883, c. 21, (22 Stat. 509,) and not under
"Schedule N, — Sundries," of the same section, § 2502, p. 511, as "bon-
nets, hats and hoods for men, women and children."

Testimony held competent, on the cross-examination of a witness, as affect-
ing his credibility, in view of contradictory statements which he had
made.

An exception to a copy of a paper is unavailing, where both sides treated it
as a copy, and no ground of objection to it as evidence is set forth.

It was proper, in an action brought by the importer against the collector, to
recover duties paid under protest, for the defendant to show that the
articles were not known, on or immediately before March 3, 1883, in
trade and commerce as "bonnets for men."

It was right on the evidence for the court to direct a verdict for the defend-
ant, especially as the plaintiff refused to go to the jury on the question
as to whether on March 3, 1883, the word "bonnet" had in this country
a well-known technical, commercial designation such as would cover the
goods in question.

THE case is stated in the opinion.

*Mr. Edwin B. Smith* for plaintiffs in error.

*Mr. Solicitor General* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an action at law brought by Lippman Toplitz and
Herman Schwarz, composing the firm of L. Toplitz & Co.,
against Edward L. Hedden, late collector of the port of New

York, to recover the sum of $6896.06, as an excess of duties paid under protest by the plaintiffs on 24 importations made into the port of New York from Glasgow, in Scotland, from July, 1885, to December, 1885, both inclusive. The suit was commenced in the Superior Court of the city of New York, in July, 1886, and removed by the defendant, by *certiorari,* into the Circuit Court of the United States for the Southern District of New York. At the trial before Judge Lacombe and a jury, in January, 1888, the court directed a verdict for the defendant, which was rendered, and judgment was entered thereon against the plaintiffs in November, 1888, to review which the plaintiffs have brought a writ of error.

In the invoices of the articles imported, they were described as " Scotch bonnets ; " and in the entries thereon at the custom-house they were, in some, described as " worsted knit bonnets," and in others as " worsted caps." The collector assessed duties upon them as "knit goods, made on knitting frames," under the following provisions of " Schedule K. — Wool and Woollens," of § 2502 of the Revised Statutes, as enacted by § 6 of the act of March 3, 1883, 22 Stat. 509, c. 121 : " Flannels, blankets, hats of wool, knit goods, and all goods made on knitting frames, balmorals, woollen and worsted yarns, and all manufactures of every description, composed wholly or in part of worsted, the hair of the alpaca, goat or other animals, (except such as are composed in part of wool,) not specially enumerated or provided for in this act, valued at not exceeding thirty cents per pound, ten cents per pound; valued at above thirty cents per pound, and not exceeding forty cents per pound, twelve cents per pound; valued at above forty cents per pound, and not exceeding sixty cents per pound, eighteen cents per pound; valued at above sixty cents per pound, and not exceeding eighty cents per pound, twenty-four cents per pound ; and in addition thereto upon all the above-named articles, thirty-five per centum ad valorem; valued at above eighty cents per pound, thirty-five cents per pound, and in addition thereto forty per centum ad valorem." The goods were shown to be made of wool, knitted on frames.

The plaintiffs duly protested against the assessment of more

than 30 per cent ad valorem, claiming that the goods were dutiable under the following provision of "Schedule N.— Sundries," of the same § 2502, page 511: "Bonnets, hats and hoods for men, women and children, composed of chip, grass, palm-leaf, willow or straw, or any other vegetable substa hair, whalebone or other material, not specially enumerateu or provided for in this act, thirty per centum ad valorem." They contended that, under that provision, the articles were "bonnets for men." The court, in directing the verdict for the defendant, gave its reasons for doing so, which are reported in 33 Fed. Rep. 617. Various errors are assigned.

(1) One of the plaintiffs, having been examined as a witness for them, testified, on cross-examination, that he had had a suit against the government other than the one on trial, under the old tariff; and he was further asked on cross-examination: "Was the claim then that these goods are caps made on frames?" To this question the plaintiffs objected, on the ground that the record was the best evidence of the claim. The court overruled the objection, and the plaintiffs duly excepted. The witness answered: "Yes; I think that is it. Similar goods were concerned in that."

The plaintiffs contend that the matter of a claim regarding similar goods under the different phraseology of an earlier tariff, was immaterial. We think that the question was a competent one, as affecting the credibility of the witness. He had testified in this case, on his direct examination, that the goods in question were Scotch bonnets, were known in this country as Scotch bonnets, and sold as such, and that they were called bonnets more frequently than caps. It was proper to show, on cross-examination of the witness, that he had made contradictory statements, oral or written, on the subject; and if he wished to appeal to the prior record, to refresh his recollection, he could call for it and do so. But the evidence as offered was competent, irrespectively of the prior record.

(2) The same witness was asked, on cross-examination, whether he remembered that, in the summer of 1882, when a bill was pending before Congress to amend the statutes bv

excluding wool goods from the provision for caps and other articles made on frames, his firm addressed a letter to Hon. S. S. Cox, a member of Congress from the city of New York, protesting against the passage of that law. The plaintiffs objected to that question as immaterial, and because the witness had no right to state the contents of the letter, and because the letter itself would be the best evidence. The court overruled the objection, and the plaintiffs duly excepted. The witness answered that his firm wrote such a letter. He was then shown what purported to be a copy of that letter, and asked if it was a copy. This was objected to on the ground that the original was not produced, but the objection was overruled, and the plaintiffs duly excepted. The defendant then offered the copy in evidence, and the plaintiffs objected.; but the court overruled the objection, and the plaintiffs duly excepted. The copy was then read in evidence, and is set forth in the record.

The plaintiffs contend that the copy was read in evidence without any proof that it was a copy. What was before said as to the first assignment of error is applicable here also. The objection that there was no proof that the copy was a copy is not taken in the bill of exceptions. The copy was treated by both sides as a copy, and the bill of exceptions merely states that when the defendant offered the copy in evidence, the plaintiffs objected; but no ground of objection is set forth. The exception, therefore, is unavailing. *Camden* v. *Doremus*, 3 How. 515; *United States* v. *McMasters*, 4 Wall. 680; *Burton* v. *Driggs*, 20 Wall. 125; *Evanston* v. *Gunn*, 99 U. S. 660.

It appeared from the letter to Mr. Cox that it was written when the tariff act of 1883 was pending before Congress; that the letter related to woollen knitted caps, worn by men; and that it protested against the existing duty on such articles, and against any increase of duty upon them. It appears by the record that Mr. Schwarz, one of the plaintiffs, appeared before the tariff committee in October, 1882, and made a statement with regard to the duties on those articles, as an importer of "Scotch caps," "to speak in regard to the tariff

on worsted and knitted goods," and stated that L. Toplitz & Co. were importers of "worsted knitted caps," which were "classed as worsted and knitted goods." It also appeared that the sign over the plaintiffs' place of business in New York City was "Importers of Scotch caps."

(3) The defendant called a witness who was asked on direct examination the following question: "Please state by what name, on the 3d of March, 1883, or immediately prior thereto, these goods were known in trade and commerce." The plaintiffs objected to that question on the ground, first, that Congress in the enactment did not have reference to commercial designation; and second, that the time to which the question referred should be stated more definitely. The court overruled the objection and the plaintiffs excepted. The witness answered, "Scotch caps." The following question was then put to him: "Please state whether, on the 3d of March, 1883, or immediately prior thereto, these goods were known in trade and commerce as bonnets for men." The plaintiffs objected to that question as immaterial, and for the same reason as before, the objection was overruled, the plaintiffs excepted, and the witness answered, "No, sir." The same course of examination was pursued in regard to several witnesses introduced by the defendant.

It is contended by the plaintiffs that the phrase, "Bonnets, hats and hoods for men, women and children," is not a commercial designation, but is only descriptive; and the case of *Barber* v. *Schell*, 107 U. S. 617, 621, is cited. But we think no error was committed in admitting the testimony; and that it was important to ascertain the commercial name of the article in question. If no such term as "bonnets," applicable to head coverings for men, was known or used in this country in March, 1883, and if, even though known before, the term was then obsolete, it would follow that it could not have been intended to apply the term to goods which were specifically described elsewhere in the acts as "goods made on knitting frames." If the commercial designation of the article gave it its proper place in the classification of the statute, resort to the common designation was unnecessary and improper.

*Arthur* v. *Lahey*, 96 U. S. 112, 118; *Barber* v. *Schell*, 107 U. S. 617, 623; *Worthington* v. *Abbott*, 124 U. S. 434, 436; *Arthur* v. *Butterfield*, 125 U. S. 70, 75; *Robertson* v. *Salomon*, 130 U. S. 412, 415.

The evidence shows that the goods in question were known commercially in the United States as "caps," and not as "bonnets," and that "caps" was also the common designation. It cannot be properly said that the statute uses the phrase "bonnets for men." The language is "bonnets, hats and hoods for men, women and children." That expression is fully answered by the words "hats for men."

The Circuit Court, in its opinion, said correctly: "Words used in these tariff statutes, when not technical, either as having a special sense by commercial usage or as having a scientific meaning different from the popular meaning — in other words, when they are words of common speech — are within the judicial knowledge, and their interpretation is a matter of law." The court held, on the evidence set forth in the bill of exceptions, that the word "bonnet" in the act of March 3, 1883, was not sufficiently broad to cover the goods in question, unless it was made so by having affixed to it at the time Congress passed the act some peculiar, technical, trade meaning, which coupled it, in the minds of the legislators, with those particular goods or goods similar to them; and that there was no proof of that.

Moreover, at the close of the trial, both parties asked for the direction of a verdict. The court denied the plaintiffs' motion, and they duly excepted. They then asked the court to submit the case to the jury, but the court refused to do so; but it offered, however, to submit to the jury the sole question whether, at the time of the passage of the tariff act of March 3, 1883, the word "bonnet" had in this country a well-known technical, commercial designation such as would cover goods of this kind. The plaintiffs disclaimed any desire to go to the jury on that question alone, but asked leave of the court to go to the jury generally. The court refused such leave, and the plaintiffs excepted. Thereupon a verdict for the defendant was directed, and the plaintiffs duly excepted. It seems to us

that this action of the court was correct, and that it offered to submit to the jury the only question which the plaintiffs could properly ask to have submitted.

(4) The other assignments of error are either immaterial or are covered by what has been already said.

*Judgment affirmed.*