### NORDLINGER v. UNITED STATES.

(Circuit Court, S. D. New York.   May 9, 1902.)

1. CUSTOMS DUTIES—CONSTRUCTION OF STATUTES—COMMERCIAL DESIGNATION.
  The commercial designation of an article, when clearly established, and shown to have been definite, uniform, and general, will control, in the construction of a tariff statute.[1]

2. SAME—EVIDENCE OF COMMERCIAL DESIGNATION.
  While commercial designation for the purpose of tariff classification is that known and used by importers and large dealers, and not that of the retail trade, a retail dealer is not for that reason incompetent to testify upon the subject, but the weight to be given to the testimony of any witness depends upon his intelligence and knowledge of the

[1] See Customs Duties, vol. 15, Cent. Dig. § 14.

subject, and a retail dealer may, from the magnitude of his business and purchases, be better qualified to testify than some importers.

**8. SAME—CLASSIFICATION—LEGHORN CITRON.**

Leghorn citron, which has always been imported in substantially the same form and condition, has been commercially designated and classified by importers and wholesale dealers since prior to the tariff act of 1883 as a dried fruit, and is properly classified under paragraph 704 of that act (22 Stat. 519), placing in the free list "fruits, green, ripe, or dried, not specially enumerated or provided for in this act," and not under paragraph 302 (page 504) as a "comfit, sweetmeat or fruit preserved in sugar."

Appeal from a decision of the board of general appraisers affirming the action of the collector in assessing duty on certain imported merchandise.

Albert Comstock, for importer.

D. Frank Lloyd, Asst. U. S. Atty., for the United States.

COXE, District Judge. The merchandise involved is known as "Leghorn citron" and was imported in 1890 while the tariff act of 1883 (22 Stat 488) was in force. The collector assessed duty under one of the paragraphs of "Schedule G—Provisions," which is as follows:

"Comfits, sweetmeats, or fruits preserved in sugar, spirits, sirup, or molasses, not otherwise specified or provided for in this act, and jellies of all kinds, thirty-five per centum ad valorem." 22 Stat. 504.

The importer insists that it should have been admitted free of duty as a "dried fruit," under a paragraph of the free list of the same act, which is in the following words:

"Fruits, green, ripe, or dried, not specially enumerated or provided for in this act." 22 Stat. 519.

Although the paragraphs in the act of 1883 are not numbered counsel agree that the paragraphs in question are, respectively, 302 and 704. The question, then, is—should the citron in controversy have been classified under paragraph 302 as fruit preserved in sugar or under paragraph 704 as a dried fruit? Or to state the issue still more concisely, has the importer proved by a preponderance of testimony that the imported citron was dried fruit?

Conceding the general proposition that Leghorn citron as imported in 1890 was preserved fruit, the importer contends that it was known commercially as "dried fruit" at and prior to March 3, 1883, the date of the passage of the act. Almost the entire proof has been taken in this court so that the question is an original one to be determined by a fair preponderance of testimony. As the board did not have the question before them upon the present record, or, in fact, upon any testimony, sufficient to establish a trade meaning, the usual rules relating to appeals from the decision of the board on questions of fact have no application here. There can be no doubt that the commercial designation of an article, when clearly established, is to be considered in preference to its ordinary designation, and fixes its status for tariff purposes. Such designation is the result of established usage in commerce and trade and must be "definite,

uniform and general, and not partial, local or personal." Arthur v. Lahey, 96 U. S. 112, 24 L. Ed. 766; Maddock v. Magone, 152 U. S. 368, 14 Sup. Ct. 588, 38 L. Ed. 482; Patton v. U. S., 159 U. S. 500, 506, 16 Sup. Ct. 89, 40 L. Ed. 233; Robertson v. Salomon, 130 U. S. 412, 9 Sup. Ct. 559, 32 L. Ed. 995; Toplitz v. Hedden, 146 U. S. 252, 13 Sup. Ct. 70, 36 L. Ed. 961.

Commercial designation, for purposes of tariff classification, can only be established by proof showing how the article in question is known in the language of trade and commerce. Where do the importers and large dealers place it? How do they classify it? By what name is it bought and sold by them? It is manifest that the language of the retail trade is insufficient to establish commercial designation, but the court is unable to accede to the proposition, so often argued in these cases, that a retail dealer is incompetent to testify upon the subject at all. The court does not so understand the law. The weight to be given to the testimony of a witness depends upon his knowledge of the subject in hand and a retail dealer who does business upon a gigantic scale, bringing him daily in touch with importers and jobbers, is certainly better qualified to throw light upon a commercial question than a wholesale dealer or importer who conducts a petty and insignificant business. In other words, it is the intelligence and knowledge of a witness which determines the weight to be given to his testimony, and not his vocation. On the other hand, it is entirely clear that an importer or wholesale dealer will, in the nature of things, be much more likely than the retailer to possess the knowledge which enables him to speak ex cathedra upon a question of commercial designation. The evidence bearing upon this question was read at the argument and the more important parts have since been re-examined with the result that the court is of the opinion that the preponderance of testimony is with the importer.

Comparing the group of witnesses called by the importer with those called by the government it is thought that the former by reason of their large business transactions and extensive knowledge were better qualified than the latter to speak upon questions relating to the trade and commerce of the country. It is true that many of the importer's witnesses are directly interested in the result of this litigation, but on the other hand their testimony is strongly corroborated by a large number of publications addressed to the wholesale trade in different sections of the country from which it appears that Leghorn citron has uniformly and for many years been classed as a dried fruit. These publications were issued since the date of the act, but were made competent by the undisputed testimony that the classification began years prior to the act and has continued unchanged to the present day. The finding that citron is, and was at the date of the act of 1883, known commercially as a dried fruit is in conformity with the decision of this court in Nordlinger v. U. S., 69 Fed. 92, and, although a large volume of additional testimony has been taken, precisely the same issue is presented. But it is argued that even though the court should find that citron was known commercially as a "dried fruit" it is more specifically provided for as a "fruit preserved in sugar or sirup." In other words, it is contended that paragraph

302 provides a duty upon a dried fruit if that dried fruit is preserved in sugar. The question thus presented is an interesting one and much may be said upon both sides, but it is thought that the argument of the district attorney, although able and ingenious, fails to give sufficient significance to the commercial designation, which, for the sake of argument, must be assumed as established, and proceeds upon the theory that Leghorn citron is in fact a dried fruit and is also in fact a fruit preserved in sugar and that as between the two descriptions the latter, namely, "preserved in sugar" is the more specific. The trade name when ascertained fixes the character of citron for tariff purposes. Being known to commerce as a dried fruit it would seem that congress must have intended to include it under that term notwithstanding that it was also a preserved fruit in fact, but not so known commercially. Although preserved fruit, Leghorn citron was known to the wholesale trade as dried fruit and was bought and sold under that name. Can the fact that sugar was used in the preserving process take it out of the commercial category? It is thought not. Take for illustration a typical dried fruit, raisins for instance; it certainly would not alter the tariff classification of raisins to show that sugar was used in the drying or preserving process. Indeed, the proof shows that well known members of the dried fruit group are subjected to a preserving process in which sugar, spirits and sirup are employed. There never has been any doubt as to the citron imported. It came from the Mediterranean and was known as Leghorn citron because this was the largest point of export. It always was imported in substantially the same condition. It never came to this country with the original sirup of preservation still remaining. It never came in bottles or casks in liquid of any kind. Neither was it imported after being subjected to the heat of the sun as the sole drying process. Although the precise method by which Leghorn citron was prepared was not known in this country until recent years the process was always the same and so was the product. Trade and commerce had to deal with one variety only and it was this article, always the same in origin, method of preparation and appearance, that the wholesale merchants and importers of the country chose to designate as a dried fruit and which they necessarily excluded from the category of preserved fruits. All this is made clear by the testimony offered by the importer. The testimony of Mr. Gordon may be taken as illustrating the distinctions suggested. He says:

"My firm is Gordon & Dilworth. My business is dried fruits, general preserved fruits, jellies, jams, and table delicacies generally. At and prior to 1883 I personally dealt in the Leghorn citron in controversy in this case; both buying it and selling it. I always bought and recognized it as dried fruit. I have bought Leghorn citron in the wholesale markets of this country for at least fifteen years prior to 1883. The word 'sweetmeat' is a general term and includes preserved fruits, jellies, jams, glacéd fruits, any compound preparation of fruits, and would be limited in its application to those things preserved with sugar; while the term preserved fruits had, certainly by 1883 and for many years prior to that, to the trade and consuming public, narrowed itself down, that when mentioned without any other explanation always meant fruits preserved in sugar, or sugar sirup, and the original sirup remained with the fruit without separation. Ever since the foundation

of the house of Gordon & Dilworth, just fifty years ago this year, they have put up preserved citron, and preserved citron has been manufactured universally through the country both by business houses and by private families and always has meant what I have indicated preserved fruits to mean, namely, the fruit put up with the original sugar or sirup of preservation without separation. It was intended for immediate consumption, for eating. The main use of Leghorn citron is for mincing and using in the manufacture of plum puddings, mincemeats, cakes, and other composite culinary concoctions. It is also purchased by confectioners who use it in composition in making candies. It is also cut into small pieces, put through special processes, and then sold in its prepared state as a part of the general stock of a candy merchant. It undergoes a preparation, generally steeping in sirup and glacé, or something of that kind. Every dealer has a different way of doing things. My house manufactured an extensive line of these products for consumption of the class I have described. The preserved citron in bottles and sirup and the mincemeat and plum pudding containing citron, those are largely made by our house which is the oldest house in the country."

Another witness, Mr. Dudley, who was called for the government, testified as follows:

"Q. What are the principal articles known in the trade as dried fruits? A. Prunes, raisins, currants, prunelles, citron. Q. And citron? A. Yes, sir. Q. Well, you have named citron for what reason as a dried fruit? A. Because I think it is generally understood in trade as a dried fruit. Q. How is it regarded commercially? A. Commercially it is a dried fruit."

Mr. Hoffman, another government witness, while not personally in accord with the commercial designation, testified as follows:

"Q. Was citron commercially known as a dried fruit at and prior to the year 1883? A. Yes. Q. It was known as a dried fruit? A. It was known then as well as now as a dried fruit, if you take it that way. Q. Was it known commercially as a dried fruit? A. No more then than it is now. Q. It is known now as a dried fruit commercially? A. Yes, it is; you couldn't put it under any other heading."

To quote further from the voluminous record would unnecessarily prolong this opinion; sufficient already appears to make it clear how Leghorn citron was regarded in trade and commerce. The weight of evidence is to the effect that it was recognized as a dried fruit and that paragraph 302 was considered as having reference to a distinct group of fruits in no way liable, in the nomenclature of commerce, to be confused with the other well-known group covered by paragraph 704. If the importer's contention be correct that citron was known commercially as a dried fruit then it is as much within the provisions of paragraph 704 as if it were mentioned there eo nomine. Let it be assumed, in order to test the correctness of the government's contention, that this was the fact, that paragraph 704, instead of being couched in general terms, mentions the dried fruits by name, as "dried figs, dates, citron," etc. We then would have "dried citron" opposed to "fruits preserved in sugar" and there can be no question that the former is the more specific description of Leghorn citron, especially when it appears that this was the only kind of citron imported and the lawmakers could have had no other kind in mind. It will be noted that several members of the dried fruit group are specially provided for in Schedule G, namely, figs, raisins, dates and prunes. In Cadwalader v. Zeh, 151 U. S. 171, 14 Sup. Ct. 288, 38

L. Ed. 115, the court, at page 178, 151 U. S., and page 291, 14 Sup. Ct., 38 L. Ed. 115, says:

"If the whole testimony in the case enabled the jury to determine whether the articles in question were commercially known as toys, their commercial designation by those carrying on the business of dealing in them was a safer test, and more in accord with the apparent intent of congress, and with the rule of construction judicially established in similar cases, than to leave the question, whether 'toys' or 'earthenware' was the fitter name for these articles, to be decided by the opinion of jurors based upon their personal knowledge or experience."

In Robertson v. Salomon, supra, the court says:

"The commercial designation, as we have frequently decided, is the first and most important designation to be ascertained in settling the meaning and application of the tariff laws. But if the commercial designation, fails to give an article its proper place in the classifications of the law, then resort must necessarily be had to the common designation."

In the Tea Case, 9 Wheat. 430, 6 L. Ed. 128, it appeared that although there existed a simple and distinct tea known as "Bohea," the name, in a commercial sense, had been used to designate a compound made up in China of various kinds of the lowest priced black teas. It was held that if the tea in question was bought and sold under the name "Bohea" its place was fixed thereby for tariff classification. Applying the law to the facts here it is thought that the preponderance of testimony is to the effect that the citron in controversy was known commercially as a dried fruit and that paragraph 704 more aptly describes citron in the crude condition in which it was brought to this country than paragraph 302, which relates to fruits advanced from the crude state by a comparatively elaborate and expensive method of preservation. The case presents one of the most puzzling controversies arising in tariff law which the court has had to consider for many years. The protean character of the article in question growing out of the fact that sea water, boiling water, sugar and heat are all employed in drying and preparing it for market, the disagreement upon the question of commercial designation and the conflicting results in prior litigations, all combine to surround the issue with embarrassments and perplexities. Nevertheless the court, after somewhat extended examination and reflection, is convinced that the contention of the importer is correct.

The decision of the board, in so far as it relates to citron, is reversed and in all other respects it is affirmed.