HABICHT, BRAUN & Co. *et al. v.* UNITED STATES (No. 679).[1]

WALNUTS OF ALL KINDS, SHELLED.

The attempts to establish a commercial designation must be deemed to have failed, though a proper view of the language in paragraph 281, tariff act of 1909, would exclude in its construction any evidence of trade designation; the words there are essentially descriptive, not denominative. Walnut meat, broken in parts less than halves, are dutiable as "walnuts of all kinds," "shelled," under paragraph 281.

United States Court of Customs Appeals, January 12, 1912.

APPEAL from Board of United States General Appraisers, G. A. 7229 (T. D. 31651).

[Affirmed.]

Comstock & Washburn (Albert H. Washburn of counsel) for appellants.

Wm. L. Wemple, Assistant Attorney General (Wm. A. Robertson on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This is an appeal from a decision of the Board of General Appraisers affirming a decision of the collector of customs at the port

---

[1] Reported in T. D. 32206 (22 Treas. Dec., 136).

of New York, classifying certain pieces of walnut meat, broken in parts less than halves, as "walnuts, * * * shelled" under the provisions of paragraph 281 of the tariff act of August 5, 1909. The paragraph reads:

281. Filberts and walnuts of all kinds, not shelled, three cents per pound; shelled, five cents per pound.

Counsel for the importers, appellants here, maintain that the merchandise is a nonenumerated unmanufactured or a nonenumerated manufactured article, and, if not either such, properly dutiable under the provisions of paragraph 283 of the act, which, in so far as pertinent, is as follows:

283. Nuts of all kinds, shelled or unshelled, not specially provided for in this section, one cent per pound. * * *

At the hearing it was sought by the importers to establish a commercial designation controlling the subject matter. Their brief was directed to the point that this merchandise was known in the trade and commerce as "walnut pieces." They sought to differentiate between these and the shelled halves of walnuts, claiming only the latter to be within the statutory designation "walnuts, * * * shelled," and that this merchandise was beyond that category. The Board of General Appraisers deemed the evidence insufficient, and on a careful reading of the same we think they did not err. Three witnesses testified. One of them related experiences scarcely sufficient to qualify him as a witness upon commercial designation, while the testimony of the others was by no means of that quality essential to establish such a uniform general common understanding of the trade term throughout the United States as would warrant its adoption as denominative of the meaning of a term of a provision of a tariff law.

Error is claimed by counsel for the importers in that the board excluded in part testimony offered to establish in part this alleged commercial understanding. In our view of the case there was no error which invaded any substantial right of the importers. Indeed, it would seem to us that the board would have been entirely warranted in excluding all evidence going to the point of commercial designation, upon the ground that the statute itself bears inherent evidence that it was not used by Congress in a commercial sense. The Supreme Court in Newman v. Arthur (109 U. S., 132, 137), speaking upon this subject, stated:

It is sought to support this argument by invoking the rule of construing the statute applied in Arthur v. Morrison (96 U. S., 108) and the numerous cases there cited, that where words are used in an act imposing duties upon imports which have acquired, by commercial use, a meaning different from their ordinary meaning, the latter may be controlled by the former if such be the apparent intent of the statute; but the application fails in the present instance because the language used is unequivocal.

There is no reference in the statute, either expressly or by implication, to any commercial usage, and there is no language in it which requires for its interpretation the aid of any extrinsic circumstances.

The provision, paragraph 281, seems to us essentially descriptive and not denominative. By its scope it expressly endeavors to cover all classes of filberts and all classes of walnuts, reaching out without limitation from both sides of the line of distinction set forth in the paragraph itself. It does not use a term "walnuts, shelled," or a term "walnuts, not shelled." It uses the phrase "walnuts of all kinds," first "not shelled" and second "shelled." In the first place, the classes of walnuts are modified by the phrase "of all kinds," indicating the comprehensive idea of Congress, and the limiting words "not shelled" and "shelled" are sufficiently broad to cover every description, kind, and class of walnut meats, without any limitation as to whether they are broken in one piece or two pieces or a greater number of pieces.

We think the internal evidences of the paragraph itself would have justified the board in excluding all testimony going toward the point of commercial designation upon the ground, as set forth in the case of Newman *v.* Arthur, *supra,* that not only was there lack of intent upon the part of Congress to use the words in a commercial sense, but its adjective character and descriptive force are peculiarly of that quality as to plainly indicate a broad general description upon the part of Congress of all classes of this merchandise whether in the shell or out, regardless of condition.

*Affirmed.*