UNITED STATES *v*. TODD·& Co. (No. 2047).[1]

PARAGRAPH 79, TARIFF ACT OF 1913—"EARTHENWARE * * * ORNAMENTED OR DECORATED IN ANY MANNER"—COMMERCIAL DESIGNATION.

In the *common* acceptation of the words, the provision of paragraph 79, tariff act of 1913, for "earthenware * * * ornamented or decorated in any manner," does not include only such as has been "ornamented or decorated" (the two words being held to be practically synonymous) by some process applied after molding. But the provision is open to proof of commercial designation, and, upon proof that such is the *commercial* understanding, the decision of the Board of United States General Appraisers classifying earthenware ornamented or decorated in the mold as "plain white" under the paragraph is affirmed.

---

[1] T. D. 38690.

United States Court of Customs Appeals, April 15, 1921.

APPEAL from Board of United States General Appraisers, Abstract 43723.
[Affirmed.]

*Bert Hanson*, Assistant Attorney General (*John J. Mulvaney*, special attorney, of counsel), for the United States.

*Brooks & Brooks* (*Frederick W. Brooks, jr.*, and *Ernest F. A. Place* of counsel) for appellees.

[Oral argument Nov. 4, 1920, by Mr. Mulvaney and Mr. Place.]

Before SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The issue here relates wholly to the classification of white earthenware embossed in the mold, the sole question being whether it is dutiable at 35 per cent ad valorem under the first part of paragraph 79 of the tariff act of 1913 as not ornamented or decorated in any manner, or at 40 per cent under the last part thereof as ornamented or decorated in any manner. The material portions of the paragraph are as follows:

Earthenware and crockery ware composed of a nonvitrified absorbent body; * * * if plain white, * * * not painted, colored, tinted, stained, enameled, gilded, printed, ornamented or decorated in any manner, * * * 35 per centum ad valorem;

If painted, colored, tinted, stained, enameled, gilded, printed or ornamented or decorated in any manner, * * * 40 per centum ad valorem.

As is said in the Government's brief, the record here is that made in the case of United States *v.* Mutual China Co. (9 Ct. Cust. Appls. 232; T. D. 38202), supplemented by the oral testimony of a witness who identified the samples now before us and explained the process of their manufacture.

In that case we were of opinion that the embossing upon the wares there in question was of such an inconsequential character that it did not in fact constitute an ornamentation or decoration thereof within the contemplation of the paragraph, and the judgment below was affirmed.

The issues here are:

First. Whether the embossing on the wares of these importations, which, as in the Mutual China Co. case, was all done in the mold, is of such inconsequential character as to bring it within the rule of that case; and

. Second. If not so, has it been shown that within the commercial understanding the wares are not ornamented or decorated, and so still within the provision for the lower rate of duty.

And in this connection it is urged by the Government that, so far as applicable to the merchandise now before us, the paragraph is not subject to proof of commercial designation because Congress has clearly indicated a contrary intent; and, further, that in any event the claimed commercial designation has not been established.

In the former case we did not deem it important to consider the question of commercial designation, although it was fully presented. In this appeal it is necessary to do so, because we are clearly of opinion that the embossing upon the wares is not inconsequential, but is so much more striking and important, so clearly indicative of an intention to produce an ornamented or decorated appearance, and does so surely so result, that the conclusion of the Board of General Appraisers that it is not in fact ornamented or decorated in any manner, under the rule of the Mutual China Co. case, can not be upheld.

It is in effect contended that in order to justify classification under the last quoted part of the paragraph the ornamentation or decoration must be the result of some superadded process applied after molding. Based wholly upon the common meaning of the language, we do not think this contention can be upheld. It is rather the result produced and apparent upon the wares which must determine the classification, instead of the order in point of time or the method of its production, and in that view the wares here are "ornamented" or "decorated," and we regard these two words as substantially synonymous.

The views of the court upon that question are fully expressed in Smith v. United States (8 Ct. Cust. Appls., 256; T. D. 37535) and United States v. Wakem (2 Ct. Cust. Appls., 411; T. D. 32170). We expressly desire to note, however, that in those cases the question of commercial designation was not considered.

We are of opinion that that part of paragraph 79 which is applicable to these importations is subject to proof of commercial designation.

The question of whether or not a descriptive term may be legally subject to proof of commercial designation has been fully considered by this court.

In Pritchard v. United States (2 Ct. Cust. Appls. 247; T. D. 31974) it was said:

We are unable to agree with the contention of appellants that when merchandise is referred to by descriptive terms it may not, if it can, be shown that those terms have a commercial meaning.

In that case the learned Assistant Attorney General, who represented the Government, aptly argued that the logic of the rule demanded that conclusion. In his brief, after citing many authorities, he said, "We believe the cases will be searched in vain for any decision of the courts expressly holding that no descriptive phrase or part thereof may ever be interpreted according to commercial understanding."

In American Express Co. v. United States (10 Ct. Cust. Appls., 275; T. D. 38680), we somewhat extensively reviewed the authorities upon that question, and again reached the same conclusion. We refer to that case for further discussion upon the subject. One interested

may find support for the conclusion by reference to the following, among other cases that are not therein cited: Arthur *v.* Morrison (96 U. S., 108); American Net & Twine Co. *v.* Worthington (141 U. S., 468); Toplitz *v.* Hedden (146 U. S., 252); Sonn *v.* Magone (159 U. S., 417); United States *v.* Buffalo Gas Fuel Co. (172 U. S., 339); United States *v.* Nordlinger (121 Fed., 690). Nor is it necessary, when it is claimed a descriptive phrase has a commercial meaning, to show that the commercial designation in use covers and embraces every word which is contained in the descriptive phrase employed in the statute. Certain words therein may plainly, sometimes, be the subject of trade meaning.

Toplitz *v.* Hedden, supra, is a good illustration. There the descriptive phrase under review was—

Bonnets, hats, and hoods for men, women, and children, composed of chip, grass, palm leaf, willow or straw, or any other vegetable substance, hair, whalebone, or other material.

In the court below commercial testimony had been offered by the Government and received subject to the importer's objection, tending to show that the merchandise, which was invoiced as "Scotch bonnets" and described in the entries as "worsted knit bonnets" or "worsted caps," was not known in the trade and commerce as bonnets for men.

The Supreme Court, however, found no error in receiving this evidence, and seems to have found nothing in Barber *v.* Schell (107 U. S., 617) opposed to that conclusion.

In Revillon Freres *v.* United States (2 Ct. Cust. Appls., 209; T. D. 31948) so called "pony skins" were claimed not to be within the commercial meaning of the statutory expression "furs dressed on the skin," and the evidence showed that the trade did not use the statutory term of "furs dressed on the skin" in referring thereto, but employed the shorter term of "skins" or "dressed skins," which the trade understood as synonymous with the longer expression. It was said by Smith, Judge, speaking for the court, that—

Ellipsis is as much in use in the business as in the literary world, and whether an order is given for "skins" or "fur skins," "dressed skins" or "dressed fur skins," the meaning is just the same to the trade which required for its uses only "skins" which serve the purpose of fur skins.

We do not regard Habicht *v.* United States (2 Ct. Cust. Appls., 457; T. D. 32206) or Seligman *v.* United States (6 Ct. Cust. Appls., 85; T. D. 35336), so far as concerns the questions actually decided therein, as at variance with the conclusion here.

In the former we held that the commercial testimony which was received did not establish the claimed commercial meaning, and that it, as well as such thereof as was rejected, might have been excluded,

because the statute itself bore inherent evidence that Congress did not use the words under consideration in a commercial sense.

In the latter it is evident, when the whole opinion is examined, that the case turned upon two things: One, our incredulity as to the claim that coiled strips of aluminum could be commercially known as aluminum in sheets; and the other that the precise trade designation shown of "sheet aluminum in coils," did not satisfy the statutory provision for "aluminum in sheets." Manifestly there is a marked difference between those two expressions.

When the question of commercial designation is under consideration it must always be kept in mind that the reason why trade testimony is received to vary the common meaning of language employed in a tariff statute is because "the object of the duty laws is to raise revenue, and for this purpose to class substances according to the general usage and known denominations of trade."—200 Chests of Tea (9 Wheat., 428). To effectually accomplish this purpose it is obvious that sometimes such testimony may be directed to a single word or to a collection thereof, or to all or to a part of the language of a descriptive provision, unless a contrary congressional intent is clearly apparent.

For the purposes of this case it may be said that the paragraph now under consideration provides for plain white earthenware composed of a nonvitrified absorbent body, fixing two rates of duty thereon—the lower, if it is not ornamented or decorated, and the higher if it is ornamented or decorated. Can anything be plainer than that the statute is open to proof as to what the wholesale trade regards as plain white earthenware, or as to what it regards as ornamented or decorated? It would hardly be expected that the trade would employ the entire term "plain white earthenware, not ornamented or decorated in any manner," or the expression "plain white earthenware ornamented or decorated in any manner." The test might well really be what it regarded as plain white earthenware, and what of such wares it regarded as decorated or ornamented, or not decorated or ornamented, as the case might be, assuming all the time that the body of the ware was in fact nonvitrified and absorbent.

Of course, in determining whether or not a tariff statute is subject to proof of commercial understanding, its language, purpose, history, and executive interpretation, or any other relevant matter, should be taken into consideration. Construed in this view, we are unable to find, with reference to paragraph 79, anything which clearly indicates a congressional intent to exclude proof of commercial designation in determining the classification thereunder of the merchandise here, in which conclusion we find strong support in the executive interpretation thereof, which is hereinafter more fully referred to.

In the case at bar we consider it unnecessary to recite in detail the testimony upon the question of commercial designation. No witnesses were called by the Government in this or the Mutual China Co. case. In the latter numerous exhibits were called to the attention of one or both of the two witnesses who testified for the importers. Their evidence was to the effect that for 25 years or more, and throughout the United States, the wholesale trade and commerce dealing therein had always regarded earthenware of the character of that here, embossed only in the mold, with no other ornamentation or decoration thereon, as plain white, not ornamented or decorated; that the words "ornamented" and "decorated" were used in the trade, the former less frequently than the latter, but both meaning a result produced otherwise than by embossing in the mold; and, further, that this trade understanding had been definite, uniform, and general.

A large number of exhibits, many of which were illustrative, all showing, as we understand the record, various kinds and degrees of embossing in the mold, were introduced in evidence and shown the witnesses, and with one exception all these exhibits were regarded by the witnesses as excluded from the commercial understanding of wares ornamented or decorated. As to the excepted exhibit, the evidence tended to show that it would not be regarded as plain white. There were also other exhibits showing superadded ornamentation or decoration which the witnesses agreed would in the trade be regarded as ornamented or decorated.

Six other witnesses were produced by importers, whose competency was not questioned by the Government, who had been dealers in this class of merchandise for many years, and the Government conceded that these witnesses, if they testified, would all corroborate the evidence of the two whose testimony was received as to trade designations and the processes of manufacture. The case was proceeded with as if such testimony had actually been given, subject, of course, to the objection of the Government that all trade testimony should be excluded because irrelevant.

It does not definitely appear in the instant case that any exhibits actually representing the importations now under consideration were shown the witnesses in the former case, but it is clear that the exhibits represented various kinds of *similar* wares, upon all of which the embossing was done in the mold, and this case has been argued by both sides upon the theory that the testimony in the former case, therefore, was germane to the classification of the wares here, because they likewise were all embossed in the mold, and contain no superadded ornamentation or decoration.

Were it not for this, there might be some difficulty in attaching to the merchandise here the evidence of commercial designation in the

earlier case, but we proceed upon the theory that it is applicable thereto for the reason above stated. Upon this assumption we regard the evidence as establishing the fact that these wares are and have in the trade, for more than 25 years, been regarded as plain white; that they are and have been likewise regarded as not ornamented or decorated, because of the fact that the embossing was done in the mold. We conclude, therefore, that the claimed commercial designation has been established, and that the merchandise should be classified as plain white earthenware, not ornamented or decorated in any manner.

There is another important consideration not to be overlooked in this case, although in the arguments but little reference is made thereto. Indeed, the protest might well be sustained on that ground alone.

In the Mutual China Co. case the Government in its brief stated the fact to be that following the decisions of the Board of General Appraisers in July, 1894, T. D. 15169, T. D. 15170, and T. D. 15171, under paragraphs 100 and 101 of the tariff act of 1890, the practice was established of returning merchandise of this character as plain white ware, not ornamented or decorated, which practice was continued until the summer of 1918, and that it was then changed by the Treasury Department by regulation promulgated in T. D. 37684, which was based upon the decision of this court in Smith v. United States (8 Ct. Cust. Appls., 256; T. D. 37535). This fact we regard as established. The Treasury regulation clearly so indicates, and the evidence confirms it.

We have, then, presented here the question of the effect to be given in the interpretation of the statute before us of a long-continued, uniform, executive construction and application thereof in the collection of customs duties. Moreover, in considering the same it is to be noted that the Board of General Appraisers in its cited early decisions received and considered commercial testimony. A review of the statute then in force and the reenactments thereof, including the present act, discloses no such change of language with respect to this issue as to warrant the belief that Congress intended to change the classification of these wares from that originally adopted, but in view of the recognized presumption that it took cognizance of the interpretation of the statute by the executive department, implies rather a congressional ratification thereof. It is evident that but for the supposed effect of our holding in the Smith case the practice of classifying these wares as not ornamented or decorated in any manner would still be uninterrupted.

There was not in the Smith case any question of the classification of such wares as these before the court, neither was the interpretation of the paragraph providing therefor then before us, nor was

it attempted, except by way of illustration. The references thereto in that opinion were solely for the purpose of demonstrating that in the *common meaning* of the language an ornamentation or decoration was not *necessarily* limited to that produced by a superadded process, and care was taken to point out that in the decisions of the Board of General Appraisers construing the chinaware paragraphs, commercial testimony had been resorted to. In the Smith case none had been offered.

It is settled law that the reenactment of a statute without any change of phraseology to indicate a purpose to depart from a long-settled commercial meaning given thereto plainly manifests the purpose of Congress to accept such meaning and continue its application.—United States *v.* Baruch (223 U. S., 191); Ulmann *v.* United States (5 Ct. Cust. Appls., 357; T. D. 34551); United States *v.* Post & Co. (3 Ct. Cust. Appls., 260; T. D. 32568). See also Robertson *v.* Downing (127 U. S., 607); United States *v.* Healey (160 U. S., 136); United States *v.* Falk (204 U. S., 143); Komada *v.* United States (215 U. S., 392).

The judgment of the Board of General Appraisers is *affirmed.*

### CONCURRING OPINION BY DE VRIES, JUDGE.

This merchandise consists of "white earthenware embossed in the mold." Because the earthenware is not embossed by superadded process but "in the mold," for the reasons set forth in the dissenting opinion in Smith & Co. *v.* United States (8 Ct. Cust. Appls., 256, 262; T. D. 37535), I concur in the result herein. By the same deductions I am unable to agree with the reasoning herein that *any* ornamentation or decoration, *not superadded,* is within the purview of paragraph 79 of the tariff act of 1913, as "ornamented or decorated." While such may be *ornamental,* they are in no case "ornament*ed*" or "decorat*ed.*"

Nor am I in accord with the conclusion reached that trade usage controls or is relevant to said paragraph 79.

The pertinent parts of the paragraph as quoted may well be here repeated.

Earthenware and crockery ware composed of a nonvitrified absorbent body; * * * if plain white, * * * not painted, colored, tinted, stained, enameled, gilded, printed, ornamented or decorated in any manner, * * * 35 per centum ad valorem;

If painted, colored, tinted, stained, enameled, gilded, printed or ornamented or decorated in any manner, * * * 40 per centum ad valorem.

If it is within the ingenuity of Congress to construct a descriptive phrase as a tariff designation involving selected materials and a series of strictly descriptive conditions, so as to avoid variance by trade testimony, this paragraph so witnesses. If it does not, that long-exercised legislative method of Congress is no longer available.

The earthenware and crockery, eo nomine articles, are not here by name, adjectively or descriptively, made dutiable, but according as (1) they are composed of nonvitrified absorbent materials; (2) *if* that material is of a certain color; (3) in the alternative at different rates of duty whether or not painted or etc.; and (4) *any* of these *in any manner.* Here Congress is studiously reaching out not for a *named article* but for a clearly defined and described material and condition of an article, rating duty according to minute processes of production.

Duty is not made dependent, solely upon a named article but upon such *when* composed of certain defined materials in numerously described conditions thereof, *leaving out of the provision all other articles of the same name* not within the described conditions and not of the designated materials.

This tariff designation is on all fours with that in Barber *v.* Schell (107 U. S., 617, 621), as recited in Cadwalader *v.* Zeb (151 U. S., 171, at page 178):

In Barber *v.* Schell (107 U. S., 617, 621), the words held *not to be affected by commercial usage* were "all manufactures *composed wholly of cotton,* which are bleached, printed, painted or dyed."—Act of March 3, 1857 (ch. 98, sec. 2; 11 Stat., 193). That designation, as observed by Mr. Justice Blatchford, speaking for this court, and following the decision of Mr. Justice Nelson in Reiner *v.* Schell (4 Blatch., 328), was *a designation of articles by special description of quality or material, as contradistinguished from designation by a commercial name—*

And is precisely within the observations of the Supreme Court in United States *v.* Klumpp (169 U. S., 209, at p. 216):

It will be perceived that the acts of 1890 and 1894 did not levy a duty on "worsted dress goods," eo nomine, *nor on worsted dress goods by commercial designation,* nor on worsted dress goods as distinguished from woolen dress goods; but a duty on dress goods, whether made of "wool, worsted, the hair of the camel, goat, alpaca or other animals." *The description is addressed to the quality and material of the goods, namely,* women's and children's dress goods, *made of wool,* worsted, etc.

The principle then that the special designation of an article by *its commercial meaning* should prevail over general terms used in the same or a later act, *has no application.*

Indeed, this court has had occasion heretofore to declare that a tariff designation of an article directed to alternative conditions of manufacture and related to all kinds thereof is descriptive and thereby manifests the intention of Congress that it was not intended to be varied by trade usage. In Habicht, Braun & Co. et al. *v.* United States (2 Ct. Cust. Appls., 457, 459; T. D. 32205), we said:

The provision, paragraph 281, seems to us essentially descriptive and not denominative. By its scope it expressly endeavors to cover all classes of filberts and all classes of walnuts, reaching out without limitation from both sides of the line of distinction set forth in the paragraph itself. It does not use a term "walnuts shelled," or a term "walnuts, not shelled." It uses the phrase "walnuts of all kinds," first "not shelled" and second "shelled." In the first place, the classes of walnuts are modified by the phrase "of all kinds," indicating the comprehensive idea of Con-

:gress, and the limiting words "not shelled" and "shelled" are sufficiently broad to cover every description, kind, and class of walnut meats, without any limitation as to whether they are broken in one piece or two pieces or a greater number of pieces.

We think the internal evidences of the paragraph itself would have justified the board in excluding all testimony going toward the point of commercial designation upon the ground, as set forth in the case of Newman *v.* Arthur, supra, that not only was there lack of sense, but its adjective character and descriptive force are peculiarly of that quality as to plainly indicate a broad general description upon the part of Congress of all classes of this merchandise, whether in the shell or out, regardless of condition.

It may be added that while the reasoning therein was predicated upon Newman *v.* Arthur (109 U. S., 132), it is fully within and equally supported by Cadwalader *v.* Zeh (151 U. S., 171, 176).

This reasoning finds its confirmation in this record, which shows that it is impossible to establish by trade testimony a trade understanding as to any of these tariff designations even when involving only the simplest possible combination of the designative words here employed by Congress.

There were but two witnesses actually testifying upon this point, Mr. Pitcairn and Mr. Burgess.

Mr. PITCAIRN:

Q. Was there, prior to October 3, 1913, a term used in your trade, plain white not ornamented, or plain white not decorated?—A. Not as a term; not the full term.

Q. That is what I mean.—A. No, sir; not to my knowledge.

Mr. BURGESS testified:

Q. Mr. Burgess, prior to October 3, 1913, was there in trade a term plain white not ornamented?

General Appraiser HAY. Embracing that entire phrase, you mean?

Mr. MULVANEY. Yes, sir.

A. I don't know that there was any general term embracing the entire phrase. There was plain white ware

Q. I am speaking of the phrase plain white not ornamented, or plain white not decorated.—A. A descriptive term that would be used.

General Appraiser HAY. He asked whether there is any such term used in trade.

WITNESS. Not in general usage; no.

True, these witnesses did testify as to a trade understanding of the terms "plain white earthenware," but as this court held in Seligmann et al. *v.* United States (6 Ct. Cust. Appls., 85; T. D. 35336), trade proof not within the words of the statute is not the *necessary* proof in such cases. The legislative designation here is much broader, involving factors in no wise covered by the proven trade term.

Moreover, it is most urgently submitted, that where it is manifested in any part of a tariff designation, or by the whole thereof, that Congress employed it in a clearly descriptive and not in a trade sense, the court should in no case, in part or as a whole, defeat that intention of Congress by opening up to trade proof the whole or any part of such a comprehensive unified tariff designation. For these reasons and those more fully expressed in the dissenting opinion in

American Express Co. v. United States, suit No. 1947 (10 Ct. Cust. Appls., 275; T. D. 38680), I am unable to agree that said paragraph 79 is the subject of trade testimony. Upon the ground before stated, however, I agree with the order herein of affirmance.