## Case No. 12,034.

### ROOSEVELT et al. v. MAXWELL.

[3 Blatchf. 391.] 1

Circuit Court, S. D. New York.   Jan. 23, 1856.

CUSTOMS DUTIES — GLASS — POLISHED WINDOW GLASS—COMMERCIAL TERMS—COMPUTATION OF FOREIGN MONEY—PROTEST.

1. Under the tariff act of July 30, 1846 (9 Stat. 42), glass which is neither broad, nor crown, nor cylinder window glass, and is used for glazing windows, book-cases and pictures, and generally for the purpose for which other window glass is used, is liable to a duty of 30 per cent. ad valorem under Schedule C to said act, as being within the terms "manufactures, articles, vessels and wares of glass, or of which glass shall be a component material, not otherwise provided for."

2. In ascertaining the meaning of terms used in a tariff act, recourse is had to their meaning, according to the commercial understanding of the terms in our markets at the time the act was passed; and, where it does not appear

from the act itself, that some other certain fixed meaning is intended by the terms used, they are to be understood according to the commercial meaning of the terms in our markets at the time the act was passed; but, where it does appear by the act itself, that a particular meaning was intended by the terms used, that particular meaning must be adopted, in giving a construction to the act whatever the commercial meaning of the terms may have been.

3. It is not to be presumed that congress, when it substitutes the provisions of one tariff act for those of another, intends to use terms in a sense different from that in which they were used in the prior act.

4. Under the act of March 3, 1843 (5 Stat. 625), the value of the Bremen thaler of 72 grotes, at the custom house, is fixed at 71 cents; and, if a collector, in assessing duties on an invoice and entry made out in Bremen thalers, computes the thaler at a higher rate than 71 cents, the excess of duties paid in consequence of such computation, may, if paid under a proper protest, be recovered back.

This was an action [by Cornelius V. S. Roosevelt and others] against [Hugh Maxwell] the collector of the port of New York, to recover back an excess of duties paid by the plaintiffs on an importation from Bremen of an article known in commerce as polished window glass, and sometimes called polished crystal plate window glass, and sometimes German plate, or crystal glass, or polished plate.

John S. McCulloh, for plaintiffs.
J. Prescott Hall, for defendant.

INGERSOLL, District Judge. The glass in question in this case is neither broad nor crown nor cylinder window glass. It is used for glazing windows, book-cases and pictures, and generally for the purposes for which other window glass is used. The duty charged upon the importation by the defendant was a duty of 30 per cent. ad valorem. The plaintiffs insisted that the duty authorized by law was one of only 20 per cent. ad valorem, and they paid the excess under a proper protest.

The invoice and entry were in Bremen thalers, of 72 grotes each. The collector, in fixing the value in the currency of the United States, computed the thaler of 72 grotes at 78¾ cents. The plaintiffs insisted that the thaler should be computed at 71 cents. The excess caused by the computation of the value of the thaler adopted by the collector, was also paid under a proper protest.

The 3d section of the act of July 30, 1846 (9 Stat. 42), provides as follows: "There shall be levied, collected and paid, on all goods, wares and merchandise imported from foreign countries, and not specially provided for in this act, a duty of twenty per centum ad valorem." The articles contained in Schedule C of the act are to pay a duty of 30 per cent. ad valorem. Such articles, therefore, are specially provided for in the act. The articles of glass set down in Schedule C are as follows: "Glass, colored, stained or painted; glass crystals for watches; glasses

or pebbles for spectacles; glass tumblers, plain, moulded or pressed, not cut or punted; paintings on glass; porcelain glass." "Manufactures, articles, vessels, and wares of glass, or of which glass shall be a component material, not otherwise provided for." The articles contained in Schedule E are to pay a duty of 20 per cent. ad valorem. The articles of glass set down in Schedule E are as follows: "Window glass, broad, crown, or cylinder." No other article of glass is set down in Schedule E. It is admitted by both parties, that the glass imported by the plaintiffs is neither broad, nor crown, nor cylinder window glass, and is not embraced or provided for in Schedule E. The plaintiffs claim that the goods imported by them are not embraced or specially provided for in any schedule or section of the act; that they come under the description of "all goods, wares, and merchandise imported from foreign countries, and not specially provided for," mentioned in the 3d section of the act, and are, therefore, subject to pay a duty of only 20 per cent. ad valorem. The defendant insists that the goods in question are embraced in Schedule C of the act; that they are specially provided for in that schedule, under the description of "manufactures, articles, vessels, and wares of glass, or of which glass shall be a component material;" and that they are "not otherwise provided for" in the act. He, therefore, claims that they were subject to a duty of 30 per cent. ad valorem, and that he was right in charging duties at that rate.

In ascertaining the meaning of terms used in tariff acts, as such acts relate to commerce, recourse is had to their meaning, according to the commercial understanding of the terms in our markets, at the time the acts were passed; and, where it does not appear from the act itself, that some other certain fixed meaning is intended by the terms used, then they are to be understood according to the commercial meaning of the terms in our markets at the time the act was passed. Curtis v. Martin, 3 How. [44 U. S.] 106, and cases there cited. The ordinary and common meaning given to the terms "manufactures, articles, vessels, and wares of glass," would include window glass or glass for windows. And the plaintiffs, in order to exempt their goods from the payment of a duty of 30 per cent. ad valorem, must satisfactorily show, that at the time the act of July 30, 1846 [supra] was passed, the commercial understanding of the terms in our markets, was different from their ordinary meaning, and that the commercial meaning of the terms, at that time, in our markets, was well and generally understood, and did not include any kind of window glass. In other words, they must show that at the time the act was passed, the terms "manufactures, articles, vessels, and wares of glass," according to the definition given to them by commercial men, and generally known and understood in our markets, did not mean glass that was used for glazing windows—that window glass was not, according to the commercial definition of it in our markets, known as a manufacture, or an article, or a vessel, or a ware of glass.

There is no proof to show that, at the time the act of July 30th, 1846, was passed, the commercial understanding of these terms in our markets was different from the ordinary meaning of the terms. To be sure, an attempt is made to show that, in the month of December, 1853, more than seven years after the act was passed, and when this cause was tried, the commercial understanding then of the terms "manufactures, articles, vessels, and wares of glass, or of which glass shall be a component material," did not designate or include any kind of window glass. If this attempt were successful, it would not prove that, at the time the act was passed, the commercial meaning of the terms was different from their ordinary meaning. And, even if it had been proved that the commercial meaning, at the time the act was passed, was that those terms did not include or designate any kind of window glass, it would not necessarily follow that the commercial understanding of the terms should be adopted, in giving a construction to the act. The commercial understanding of the terms might be adopted, if it did not appear, by the act itself, that a different meaning was intended by the law makers. And if it does appear, by the act itself, that a particular meaning was intended by the terms used, then that particular meaning should be adopted, in giving a construction to the act, whatever the commercial meaning of the terms may have been.

By the act of August 30, 1842 (5 Stat. 548), most of the articles of glass ware, which by that act were subjected to duties, were specified. It is very evident, from that act, that, in the terms "all articles or manufactures of glass" were included all kinds of glass wares, whether cut glass, moulded or pressed glass, vials and bottles, jars, demijohns and carboys, window glass, glass in sheets or tables, plate glass, porcelain glass, colored glass, or any other kind of glass. And it is not to be presumed that congress, when it substituted the provisions of the act of 1846 for those of the act of 1842, intended to use terms in a sense different from that in which they had been used in the prior act. If congress did so intend, it must be shown.

In the act of 1846, very few of the articles of glass ware are specified. In Schedule B, "glass, cut" is provided for; and that is the only kind of glass provided for in that schedule. That was to pay a duty of 40 per cent. No other kind of glass is provided for until we come to Schedule C. "Glass, cut" having been provided for in Schedule B. no other provision was required for that. No subsequent general provision, even if it were without qualification, would include that. In Sched-

ule C, the provision is, "manufactures, articles, vessels, and wares of glass, or of which glass shall be a component material, not otherwise provided for," which are to pay a duty of 30 per cent. This general provision, even without the qualification, would not embrace "glass, cut," for that had been disposed of. The "not otherwise provided for" refers, therefore, to some other kind of glass, to be provided for in the subsequent part of the act, which the framers of the law thought would be included in the general provision, unless it was otherwise provided for. And, in looking at the subsequent schedules, we find in Schedule E, "window glass, broad, crown, or cylinder," set down as subject to a duty of 20 per cent., and thus "otherwise provided for." There is no article set down in any schedule, after Schedule C, which, by any construction, could be included under the terms "manufactures, articles, vessels, and wares of glass," unless "window glass, broad, crown, or cylinder," is included under those terms.

In looking, then, into this act of July 30th, 1846, we discover that congress has, in substance, declared, that "glass, cut," shall pay a duty of 40 per cent., and that other "manufactures, articles, vessels, and wares of glass," "not otherwise provided for," shall pay a duty of 30 per cent. As, therefore, some glass, which, without a special provision, would be embraced in these general terms, is to be otherwise provided for, and as a certain kind of window glass is the only glass that is otherwise provided for, it necessarily follows that window glass was, by the framers of the law, intended to be comprehended in the terms "manufactures, articles, vessels, and wares of glass." It appears, then, by the provisions of the act, particularly when it is examined in connection with the act of 1842, that congress intended to include within these general terms, all kinds of window glass. Such being the intent of the framers of the law, as discovered from the law itself, that intent must prevail over any meaning of those terms as understood by commercial men, even if it had been proved that the latter meaning was in conflict with the former. The polished window glass of the plaintiffs is, therefore, included in the terms "manufactures, articles, vessels, and wares of glass," and, as it is not otherwise provided for, it is subject to a duty of 30 per cent., and the collector, in charging that duty, adopted the correct rate.

. But the collector, in computing the thaler of 72 grotes at 78¾ cents, when fixing the value of the importation in the currency of the United States, committed an error. It should have been computed at only 71 cents. The act of March 3, 1843 (5 Stat. 625), fixes the value of the thaler of 72 grotes, at the custom-house, at 71 cents. By that error, the plaintiffs were compelled to pay an excess of duty not authorized by law, and they are entitled to judgment for such excess, with interest, to be computed at the custom-house.