(C. D. 1700)

CONCORD WATCH CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 12, 1955)

*Lane, Young & Fox* (*William H. Fox* of counsel) for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Richard H. Welsh*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: It is admitted by counsel for the plaintiff that this case is a retrial of the issues which were decided by this court in *Concord Watch Co., Inc.* v. *United States*, 27 Cust. Ct. 57, C. D. 1348, affirmed in 41 C. C. P. A. (Customs) 13, C. A. D. 523, wherein it was held that certain desk or table watches, with rings, feet, bases, or outer frames attached thereto, were not dutiable as entireties but were properly classified by the collector of customs as follows:

(a) The movements at the appropriate rates pursuant to the provisions of paragraph 367 (a), Tariff Act of 1930 (19 U. S. C. § 1001, par. 367 (a)), as modified by the trade agreement between the United States and Switzerland (69 Treas. Dec. 74, T. D. 48093);

(b) The watchcases at the applicable rates provided for in paragraph 367 (f) (2) and (4) of said act (19 U. S. C. § 1001, par. 367 (f) (2) and (4)), as modified, *supra*; and

(c)  The rings, feet, bases, and outer frames as articles or wares not specially provided for, in chief value of metal, at the appropriate rates provided for in paragraph 397 of said act (19 U. S. C. § 1001, par. 397).

Consequently, the claim of the importer therein that the so-called rings, feet, bases, and outer frames were integral and constituent parts of the cases and, therefore, dutiable at the compound rates applicable to the cases was held to be without merit.

In the case at bar, the imported items consist of table or desk watchcases. The various items as imported have attached thereto either rings, posts, feet, or bases, designed to hold the completed articles in position when in use, and are claimed by the importer to be integral and necessary parts of the watchcases. In their imported condition, the watchcases, in addition to the rings, posts, feet, or bases, above described, were also equipped with time-keeping movements.

Since there is no tariff provision for an entirety known as a watch, paragraph 367 of the act of 1930 provides a separate classification for watch movements and other time-keeping mechanisms and also for all cases, containers, or housings, designed or suitable for the enclosure of any of said movements or mechanisms, whether or not the latter are contained therein at the time of importation. However, there is no controversy in the instant case with reference to the classification of the movements.

Cases for the enclosure of the movements in the present instance, as in the *Concord* decision, *supra*, were classified for duty in paragraph 367 (f) of said act, as modified, *supra*, and duty was assessed at the appropriate rates provided therein.

The rings, posts, feet, or bases attached to the cases were classified as articles or wares composed of metal, not specially provided for, and subjected to duty at the applicable rates in paragraph 397, *supra*, according to the component material of chief value.

The pertinent text of the statutes controlling this case is here set forth:

Paragraph 367 (f) (1) (2) (4) of said act, as modified by the trade agreement between the United States and Switzerland (69 Treas. Dec. 74, T. D. 48093):

All cases, containers, or housings, designed or suitable for the enclosure of any of the movements, mechanisms, devices, or instruments provided for in paragraph 367, whether or not containing such movements, mechanisms, devices, or instruments, and whether finished or unfinished, complete or incomplete, except such containers as are used for shipping purposes only:

    (1)  If made of gold or platinum_____ 75¢ each and 30% ad val.

    (2)  If in part of gold, silver, or platinum, or wholly of silver_____ 40¢ each and 30% ad val.

\*　　\*　　\*　　\*　　\*　　\*　　\*

(4) If of base metal (and not containing gold, silver, or platinum)_____ 10¢ each and 25% ad val.

Paragraph 397 of the Tariff Act of 1930:

PAR. 397. Articles or wares not specially provided for, if composed wholly or in chief value of platinum, gold, or silver, and articles or wares plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 65 per centum ad valorem; if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 45 per centum ad valorem.

At the trial, upon motion of the Government, the record in *Concord Watch Co., Inc.* v. *United States* (suit No. 4703), 41 C. C. P. A. (Customs) 13, C. A. D. 523, was received in evidence as defendant's exhibit A.

Exhibits introduced by plaintiff are identified as follows:

Exhibit 1, sample of the items invoiced as "round 8 day alarm, round yellow metal calottes with ring." The ring is an item in dispute. This exhibit was also exhibit 1 in suit No. 4703, *supra.*

Illustrative exhibit 2, same as exhibit 1, except that it does not contain the movement. This was illustrative exhibit 2 in suit No. 4703, *supra.*

Exhibit 3, sample of the desk watch invoiced as item #38 and described as "gilt metal pendulette square, 7½ x 7½, Style #728." The posts and feet of said desk watch are items in dispute.

Illustrative exhibit 4, photograph of a desk watch identical to exhibit 3, except that it is larger. The posts and feet of this desk watch are also in dispute.

Illustrative exhibit 5, photograph depicting the table or desk watches invoiced as "round gilt metal T. D. pendulette." The feet and bases are items in dispute.

Illustrative exhibit 6, leather pouch which can be used to enclose exhibit 1 when it is carried in a handbag while traveling.

Illustrative exhibit 7, man's leather strap wristwatch.

Illustrative exhibit 8, man's water-resistant strap watchcase.

Collective illustrative exhibit 9, so-called shells for men's strap wristwatches.

Illustrative exhibit 10, shell, so-called, for a lady's bracelet watch.

Collective illustrative exhibit 11 represents what plaintiff's witness Wessell identified as a complete case for a desk or table watch.

Collective illustrative exhibit 11-A consists of what plaintiff's witness Wessell designated as the shell part of collective illustrative exhibit 11.

Collective illustrative exhibit 11-B consists of the feet and base of collective illustrative exhibit 11.

Collective illustrative exhibit 12, folding leather case containing a metal watchcase.

Illustrative exhibit 13, metal article which, according to plaintiff's witness William Zint, consists of a part of a traveling watchcase.

The exhibits in the incorporated record (suit No. 4703) may be listed as follows:

Exhibit 1, sample of one of the items now in controversy.

Illustrative exhibit 2, which is illustrative exhibit 2 in the present case.

Illustrative exhibit 3, photograph of item No. 38, not in controversy here.

Exhibit 4, sample of a timepiece, subsequently withdrawn.

Illustrative exhibit 5, photograph of the timepiece which was originally received as exhibit 4.

Illustrative exhibit 6, photograph like illustrative exhibit 3 of item No. 38 —subsequently withdrawn.

Illustrative exhibit 7, pages 29 to 53 of a catalog of Stolz Frères S. A. Le Locle (Suisse), exclusive of the illustrations therein marked "X."

Illustrative exhibit 8, catalog of Arthur Imhof of La Chaux-de-Fonds, Switzerland, exclusive of pages 26 through 32.

At the retrial of this subject matter, plaintiff proceeded upon the theory expressed in point 2 of its brief as follows:

The word "case" in the wholesale watch and clock industry refers to and means a complete case, and does not refer to and mean only that portion of a case which encloses, or contains, or serves as a covering for the movement.

Upon this phase of the case, Robert L. Wessell, vice president and director of the plaintiff corporation, was called and testified at length. At the conclusion of his testimony, counsel for the respective parties agreed that four additional witnesses who were present at the hearing would, if called, give testimony substantially the same in all material respects as that given by Wessell. The additional witnesses were Robert Gasser of the Benrus Watch Co., William Zint of the Longines-Wittnauer Watch Co., Jean R. Graef, president of Jean R. Graef, Inc., and the Angelus Clock Corp., and Samuel Kaufman, a mechanical engineer, who was president of the following three companies: Semca Clock Co., Inc., Phinney-Walker Clock Co., and Enver Watch & Clock Co. All of these witnesses, it was agreed, had experience comparable to that of Wessell in the watch and clock business; had bought and sold table watches and clocks of all kinds—"purchased in Europe and sold in the United States at wholesale."

Wessell testified that he had been connected with the plaintiff company, which is engaged in the wholesale watch and clock business, since January 20, 1919, and had an intimate knowledge of the entire management and details of the business. Through this witness all of the exhibits from 1 to 12, inclusive, were introduced.

After describing the various exhibits at considerable length, Wessell was interrogated as to his familiarity with the word "case" in its

relation to watches and clocks, and we quote the following from the direct examination:

Q. Will you please state, within your experience, what the word "case" has been used to cover and apply to?—A. Well, the word "case" means the complete case.

Q. When you say "the complete case," with reference to an article like Exhibit 1, what would the complete case of Exhibit 1 be?—A. It would be the crystal and all the metal parts of the case. That would be the complete case.

Q. Including the ring?—A. That is correct.

Q. And what would be the complete case on an article like Exhibit 3?—A. Well, that would be the crystal and all of the metal parts there.

Q. Including the posts and base and all other parts?—A. That is correct.

Q. And is that also true with respect to the timepieces represented by Illustrative Exhibit 4 and Illustrative Exhibit 5?—A. That is correct.

Q. Has such use of the word "case" been definite and uniform and general throughout all your 35 years of experience in the watch industry?—A. Throughout my experience it has.

The substance of Wessell's testimony is that the rings, feet, bases, and posts attached to the various exhibits were parts of the cases. It is clear from his testimony, however, that the ring on exhibit 1, for instance, is placed there as a means of supporting the watch on a desk or table. As stated by the witness with reference to the ring "it has functional use, the same as the pendant and bow have functional use on a man's pocket watch."

On cross-examination, Wessell was shown exhibit 1 with the ring removed and was interrogated as follows:

X Q. Now, please look at Exhibit 1 without the ring.—A. Yes, sir.

X Q. Is the movement cased?—A. It isn't a complete case; no, sir.

X Q. Is the movement cased?—A. It isn't as we know a watch case; no, sir.

X Q. What function does the ring play in encasing the movement?—A. It acts as an easel to *permit the watch to function* and be visible.

X Q. To function as a table watch, isn't that correct?—A. That is correct. [Italics supplied.]

It is very obvious from the testimony of the witness with respect not only to exhibit 1 but as well to other exhibits that the rings, posts, feet, or bases are in reality designed not to enclose the movement but to complete the watch as an entity and adapt it for its intended use on a desk or table, the rings, posts, feet, or bases acting merely as appropriate supports for the watch.

An examination of some of the illustrations shown in exhibit 7 in the incorporated *Concord* case, *supra*, indicates the somewhat fantastic results which would flow from holding that the supporting members of a table watch are for tariff purposes parts of the watch-case rather than parts of the watch as an entity. For instance, on page 29 of said exhibit 7 there is an illustration of a table watch, together with a barometer and other indicators of equal size, set in a

miniature steering wheel of a watercraft, mounted on a round circular base; on page 45 appears an illustration of table watches and other indicating instruments, mounted on a globe of the world, which in turn is mounted on other fixtures and having a circular base; and on page 46, item No. 483, appears an illustration of a table watch and other instruments, mounted on what seems to be a miniature street lamp, supported at the bottom by an octagonal base. In this connection, note *D. Collamore & Co.* v. *United States*, 5 Treas. Dec. 482, T. D. 23792 (1902).

That case was cited by our appellate court in the *Concord* case, *supra,* but without comment. Plaintiff herein seeks to distinguish the *Collamore* case with the following statement in its brief—

* * * From the description of the articles there in question, it appears that the movement was set in a case, *which in turn was set in an outer case,* and that the outer case was suspended by means of a ring from the beak of an eagle on a base which also was an item separate and distinct from both the movement in its case, and the outer case which held the case containing the movement. The case in which the movement was set appears to have been the *watch case* and accordingly was assessed as such. [Italics quoted.]

The significance of the *Collamore* case lies in the fact that the court was of the opinion that the collector's decision was correct in classifying the movement and the case for the enclosure thereof at the appropriate rate applicable to each as provided for in paragraph 191 of the Tariff Act of 1897 (similar to paragraph 367 of the present act) covering watch movements and cases for their enclosure, and a third rate upon the so-called outer case and stand as articles or wares composed of metal in the metal catchall paragraph (193) of that act (which now appears as paragraph 397).

In the light of the foregoing, it is apparent that there is no basic difference between the *Collamore* case and the present issue, and it is not distinguishable for the reasons alleged by plaintiff in its brief.

Our appellate court in the former *Concord* case referred with apparent approval to the following definitions of the word "case," quoted in the opinion of this court there under review—

Funk & Wagnalls New Standard dictionary (1942): case, *n,* 1. Anything intended to enclose or contain something.

*       *       *       *       *       *       *

4. An outer and enclosing part that protects what is within; as, the *case* of a watch or clock, * * * [Italics quoted].

Webster's New International Dictionary, Second Edition (1948):

case * * * 1. A box, sheath, or covering of any kind; as, a *case* for holding goods; a *case* for spectacles; the *case* of a watch, * * * [Italics quoted.]

The appellate court then proceeded to say—

We are unable to find that the rings, feet (or stands), and the decorative outer frames, the duty upon which is the matter here in controversy, constitute any part which is essential to the cases as enclosures of the watch movements. Without them the movements are fully enclosed.

Further, the court said—

* * * If they were articles necessary to make the *cases* complete the situation would be different, but the fact that they are useful in the support of the *desk watches as entireties* does not make them parts of the *cases* to which they are attached. [Italics quoted.]

In the light of this judicial interpretation of the statutory provision for cases in paragraph 367 (f), and of the definitive statutory limitation of cases to such articles as are "designed or suitable for the enclosure of any of the movements, * * * provided for in paragraph 367," we are of the considered opinion that the meaning ascribed to the terms of paragraph 367 (f) by the appellate court in the *Concord* case cannot be deprived of that meaning by an attempt to establish a commercial meaning for the term "cases" since Congress has otherwise defined the term. By the same token, the effort by plaintiff herein to establish that the immediate container of a watch movement may be designated as a "shell" does not deprive it of its appropriate characterization as a case. Moreover, in the light of the language of our appellate court, the contention of plaintiff in its brief that watchcases, as such, must be suitable for their ultimate purpose as desk watchcases is not valid, inasmuch as the language of the provision, and as judicially interpreted, applies to cases "designed or *suitable for the enclosure*" of watch movements.

If it be a fact that the trade, dealing in desk watches like those in controversy here, recognizes the term "case" as embracing the rings, posts, feet, or bases, which latter are depicted in the various exhibits before us, we are clearly of the opinion that such was not the intention of the legislators in drafting the provisions of law applicable to the imported items. We point again to the statutory definition of a case as being that part of a watch which is "designed or suitable *for the enclosure* of any of the movements, * * * provided for in paragraph 367." [Italics supplied.] It challenges our belief beyond reasonable limits to attribute to Congress any intention to extend the word "case" in paragraph 367 (f), *supra*, to include the various appurtenances and supporting elements disclosed by the exhibits herein. In our opinion, the rings, posts, feet, or bases are adjuncts to a watchcase which are beyond the reach of that part of a watch "designed or suitable for the enclosure" of the movement.

Even had plaintiff established a uniform, general, and definite meaning of the word "case" or "cases" different from that adopted by us in the former *Concord* case, *supra*—which, however, we do not decide herein—we are of the considered opinion that, regardless of what is commonly referred to as commercial designation or commercial understanding, this is not a case where it should be accepted to determine the meaning of a word otherwise expressed by the lawmakers.

The rule which we believe applies here was well settled by the Circuit Court of the Southern District of New York many years ago

in *Roosevelt et al.* v. *Maxwell*, 20 Fed. Cas. 1155 (1856), where it was said—

* * * The commercial understanding of the terms might be adopted, if it did not appear, by the act itself, that a different meaning was intended by the law makers. And if it does appear, by the act itself, that a particular meaning was intended by the terms used, then that particular meaning should be adopted, in giving a construction to the act, whatever the commercial meaning of the terms may have been.

Of like import is the case of *Habicht, Braun & Co. et al.* v. *United States*, 2 Ct. Cust. Appls. 457, T. D. 32206.

Both of those cases as well as others of eminent authority were cited with approval by our appellate court in *United States* v. *Stone & Downer Co. et al.*, 16 Ct. Cust. Appls. 82, T. D. 42732, wherein it was held that asbestos shingles were not entitled to free entry within the specific provisions for shingles, although commercially so known, but should be classified for duty as manufactures of asbestos. In rejecting proof of commercial designation as a controlling element in the case, the court observed—

* * * If, in the consideration of a statute, it appears, from its language or from its context, from the legislative history of the act, or from other material facts, that it was the intent of the legislative body to restrict the meaning of the words used to their common meaning, then any commercial meaning which the words employed in the act may have, must yield to the legislative intent, which is, after all, the major guide to construction.

In the case before us, we are led to the conclusion that the context of paragraph 367 (f) contains a congressional definition to the effect that watchcases are those parts of a watch which are "designed or suitable for the enclosure" of the movement.

After carefully examining the record, briefs, and authorities relied upon by counsel, we see no reason for departing from our reasoning and conclusion in the former *Concord* case.

For the foregoing reasons, we overrule the protest on all grounds.

Judgment will issue accordingly.